FILED

22 AUG 26 PM 2:21

4ᵀᴴ JUDICIAL DIST.

IN THE CIRCUIT COURT OF THE STATE OF OREGON

IN AND FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| **RYANN GREGG,**<br><br>                Plaintiff,<br><br>        v.<br><br>**UNIVERSITY OF PORTLAND**; **MEGAN BURTON**, and ███████████ ;<br><br>                Defendants. | Case No.  22CV27382<br><br>**COMPLAINT**<br>(Breach of Contract, Negligence, Defamation, Title IX Retaliation)<br><br>Fee Authority: ORS 21.160(1)(d)<br>Prayer: $1,300,000.00<br><br>NOT SUBJECT TO MANDATORY ARBITRATION (Claim exceeds $50,000)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff alleges the following:

1.

At all material times, Plaintiff Ryann Gregg ("Gregg"), was a resident and domiciliary of Multnomah County, State of Oregon, was a student at UP and a member of its Women's Volleyball team.

2.

At all material times, Defendant University of Portland ("UP") was and is an Oregon not for profit entity doing business throughout Oregon and headquartered in Multnomah County, Oregon.  UP maintains an active campus in the City of Portland, Multnomah County where it conducts regularly sustained business and education activities.

////

////

Page 1 – COMPLAINT

The Brague Law Firm<br>4504 S. Corbett Avenue, Suite 250<br>Portland, Oregon  97239<br>503.922.2243

_Verified Correct Copy of Original 8/26/2022._

_Verified Correct Copy of Original 8/26/2022_

3.

At all material times, coach Megan Burton was an employee and agent of UP and was head Volleyball coach.

4.

Defendant ▮▮▮▮▮ was an individual who at all relevant and material times was a resident of Multnomah County, Oregon, and a UP student and Volleyball team member.

5.

Jurisdiction and venue are proper in Multnomah County because UP regularly operates its business and is headquartered in Multnomah County, Oregon.

6.

UP provides undergraduate and graduate degree programs and provides and recruits Division 1-AAA athletic opportunities with scholarships to students including Women's Volleyball.

7.

Gregg was admitted into UP as an undergraduate in 2020 with forty completed undergraduate credits and was provided a five-year athletic scholarship based on her skill and abilities in Women's Volleyball.

8.

On or about September 11, 2021 a birthday party for two UP Volleyball Team members occurred at a team member's house. Many UP Volleyball Team members attended with their friends including Gregg and ▮▮▮▮

9.

During the birthday party, ▮▮▮ was drinking, flirting, and kissing a young man. Others observed ▮▮▮ as intoxicated or drunk. At one point, ▮▮▮ and her young man went to the basement of the house alone. Shortly thereafter UP Campus Security came to the party due to a noise complaint and Gregg and her boyfriend went to the basement to let ▮▮▮ and

Page 2 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

_Verified Correct Copy of Original 8/26/2022._

1    her young man know the birthday party was ending.

2                                         10.

3        As Gregg entered the basement, she noticed ████ was fully dressed.  Then, Gregg

4    noticed blood on ████ leg and asked her what had happened and asked everyone else to

5    leave. ████ stated she couldn't remember what happened.  Gregg then escorted ████

6    upstairs to a teammate's room and the blood was cleaned from her leg.  Then, another teammate

7    drove ████ home.

8                                         11.

9        The next day, Gregg asked ████ how she was doing. ████ replied not well and

10   provided Gregg details on her status.  Gregg offered her assistance and love.

11                                        12.

12       Subsequently, Coach Megan Burton and selected a few team members to meet in secret.

13   On or about September 14, 2021 Coach Burton scheduled a mandatory UP Volleyball Team

14   meeting at 10:30 p.m. with all players being forbidden to speak except ████ During this

15   meeting ████ read a prepared statement blaming Gregg for her alleged sexual encounter and

16   claiming Gregg orchestrated, conspired, and promoted the alleged sexual encounter upon ████

17   by her young man.

18                                        13.

19       Upon information and belief, Coach Burton and ████ conspired and defamed Gregg to

20   have her removed from UP's Volleyball Team.

21                                        14.

22       On or about September 15, 2021 UP placed Gregg on leave from UP's Volleyball Team

23   and no longer allowed her to practice with the team or even enter the athletic center or locker

24   room.

25   / / / /

26   / / / /

Page 3 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

_Verified Correct Copy of Original 8/26/2022._

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

15.

UP's Title IX Sexual Harassment Policy states, in relevant part, as follows:

<u>Definitions</u>
1. Complainant – The Complainant is an individual who is alleged to have experienced conduct that could constitute sexual harassment. The Complainant can be a student, employee or third party.

2. Respondent – The Respondent is an individual who has been reported to be the perpetrator of conduct that could constitute sexual harassment.

3. Sexual Harassment - For purposes of Title IX, sexual harassment is conduct on the basis of sex that satisfies one or more of the following:
    i. A University employee conditioning education or employment benefits on participation in unwelcome sexual conduct (i.e. quid pro quo); or
    ii. Unwelcome conduct that a reasonable person would determine is so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education program or activity; or
    iii. "Sexual assault," "dating violence," "domestic violence," or "stalking" as those terms are defined below.

4. Sexual Assault – Sexual assault means an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation.

5. Dating Violence – Dating violence means violence committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. The existence of such a relationship shall be determined based on a consideration of the following factors:
    i. The length of the relationship.
    ii. The type of relationship.
    iii. The frequency of interaction between the persons involved in the relationship.

6. Domestic Violence – Domestic violence means felony or misdemeanor crimes of violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse or intimate partner, by a person similarly situated to a spouse of the victim under the domestic or family violence laws of the jurisdiction receiving grant monies, or by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the jurisdiction.

Page 4 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

EXHIBIT A
Page 4 of 24

_ Verified Correct Copy of Original 8/26/2022._

7. Stalking – Stalking means engaging in a course of conduct directed at a specific person that would cause a reasonable person to--fear for the person's safety or the safety of others or suffer substantial emotional distress.

8. Education program or activity – "Education program or activity" includes locations, events, or circumstances over which the University exercises substantial control over both the Respondent and the context in which the sexual harassment occurs, and also includes any buildings owned or controlled by the University or by a student organization that is officially recognized by the University.

9. Actual Knowledge – Actual knowledge means notice of sexual harassment or allegations of sexual harassment to the University's Title IX Coordinator or any official of the University who has the authority to institute corrective measures on behalf of the University.

10. Supportive Measures – Supportive measures are non-disciplinary, non-punitive, individualized services. Supportive measures may be offered as appropriate and as reasonably available, and without fee or charge to the complainant, respondent, or other impacted individuals, before and after the filing of a formal complaint or where no formal complaint has been filed. Supportive measures are to restore or preserve equal access to the University's educational program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University as a whole, or to deter sexual harassment. Supportive measures provided to the complainant and respondent will be confidential to the extent that maintaining confidentiality would not impair the ability of the University to provide the supportive measures. The Title IX Coordinator or designee shall be responsible for the determination of any supportive measures, including but not limited to:
  • Temporary restrictions from contacting specific individuals including mutual no contact orders.
  • Safety planning.
  • Changes to residence hall living arrangements.
  • Changes to class schedules, work assignments, or work schedules.
  • Residence hall restriction, and/or restrictions from other specific University locations.
  • Academic accommodations.
  • Connection to mental, emotional, and/or physical wellness resources.

11. Informal Resolution – In some cases, Informal Resolution may be offered as an opportunity to resolve a formal complaint prior to completion of the grievance process. Informal Resolution will only occur if both parties give voluntary, informed, written consent. At any time prior to agreeing to a resolution, any party has the right to withdraw from informal resolution and resume the grievance process with respect to the formal complaint. The University does not require, as a condition of enrollment or continued enrollment, or employment or

Page 5 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

continued employment, or enjoyment or any other right, waive the right to an investigation and adjudication of formal complaints. Under no circumstances will informal resolution be offered or facilitated to resolve allegations that an employee sexually harassed a student.

12. Emergency Removal – A student respondent may be removed from the institution, educational program, and/ or activity on an emergency basis if the respondent is determined to be an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment. This is undertaken through an individualized assessment of the safety and risk analysis.
Employees may be placed on administrative leave during the pendency of a grievance process without an emergency removal assessment.

13. Formal Complaint – A formal complaint is the document signed and filed by the Complainant or signed by the Title IX Coordinator alleging sexual harassment against a respondent and requesting that the University investigate the allegation of sexual harassment pursuant to the Title IX grievance procedures. Not all reports of sexual harassment will constitute a formal complaint. A formal complaint may be filed at any time with the Title IX Coordinator in person, by mail, or by electronic mail, or in any other manner designated by the University. In cases where the Title IX Coordinator signs a formal complaint, the Title IX Coordinator is not a complainant or otherwise a party during the grievance process, and must comply with the requirement for all Title IX personnel to be free from conflicts and bias.

[…]

16. Sanctions - Sanctions are disciplinary actions taken against a respondent if the respondent is determined to be responsible for the alleged sexual harassment. The range of potential sanctions includes, but is not limited to, permanent implementation of mutual no contact orders; to expulsion or termination of employment; and permanent bans from campus or other aspects of an education program or activity.

17. Remedies – Remedies are designed to restore or preserve equal access to the University's education program or activity. The range of potential remedies includes education and training requirements for respondents, the campus community, or specific groups, to permanent implementation of changes to class or work schedules, or living arrangements. Remedies will be provided to a complainant if the respondent is determined to be responsible for the alleged sexual harassment.

18. Business Days – Business days are the days between and including Monday to Friday and do not include University holidays, closures, and weekends.

Page 6 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon  97239
503 922 2243

Verified Correct Copy of Original 8/26/2022

_Verified Correct Copy of Original 8/26/2022._

19. Calendar Days – Calendar days include weekends and holidays.

<u>Title IX Grievance Process</u>
Once the University has received a formal complaint, the Title IX Coordinator or designee will provide written notice of the formal complaint to the parties. The written notice will include the following:
- Notice of the investigation and the University's grievance process, including any informal process.
- The identities of the parties involved in the incident, if known.
- The conduct allegedly constituting sexual harassment under Title IX.
- The date and location of the alleged incident, if known.
- A statement that the respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the grievance process.
- Notice to the parties that each may have an Advisor of their choice, who may be, but is not required to be, an attorney and who may inspect and review evidence and reports.
- A description of the range of possible disciplinary actions or sanctions based on the outcome of a "preponderance of the evidence" standard.
- A description of any available informal resolution process.
- Inform the parties of any provision in the University's policies that prohibits knowingly making false statements or knowingly submitting false information during the grievance process. The notice will be updated if allegations are added after the initial notice.

The Title IX Coordinator, or designee, will contact the complainant and the respondent individually to discuss the availability of supportive measures and consider the complainant's and respondent's wishes with respect to supportive measures.

<u>Dismissing a Formal Title IX Complaint</u>
The Title IX Coordinator must dismiss a formal complaint if:
- The conduct alleged in the formal complaint would not constitute sexual harassment as defined by Title IX even if proved, or
- The conduct did not occur in the University's education program or activity, or
- The conduct did not occur against a person in the United States, or
- At the time of filing a formal complaint, a complainant is not participating or attempting to participate in the education program or activity of the University.

The Title IX Coordinator has the authority to dismiss a formal complaint if:
- The complainant notifies the Title IX Coordinator in writing that the complainant would like to withdraw the formal complaint or any allegations therein; or

Page 7 – COMPLAINT

The Brague Law Firm
4504 S  Corbett Avenue, Suite 250
Portland, Oregon  97239
503 922 2243

EXHIBIT A
Page 7 of 24

_Verified Correct Copy of Original 8/26/2022_

• The respondent is no longer enrolled or employed by the University; or
• Specific circumstances prevent the University from gathering evidence sufficient to reach a determination as to the formal complaint or allegations therein.

Notification of dismissal will be sent to the complainant and respondent, along with the reason for dismissal. Following dismissal under the Title IX policy, the Title IX Coordinator may also consider pursuing the complaint as violation of another policy located within the Employee Handbook or Student Code of Conduct.

Acceptable bases for appeal of the dismissal of a formal complaint and the process for filing an appeal are described in the Appeals section below. A party may also appeal the University's failure to dismiss a formal complaint at various points in the Process, as described in the Appeals section below. Parties will have five (5) business days to appeal the University's decision to dismiss or not to dismiss the formal complaint.

<u>Title IX Investigation Process</u>
The Title IX Coordinator will assign an Investigator to the case. The Investigator will collect evidence, interview involved parties, request statements, inquire about additional witnesses, and document their findings, and submit an Investigative Report to the Title IX Coordinator. Prior to finalizing the Investigative Report, the Investigator will send to each party and the party's Advisor, if any, all evidence obtained that is directly related to the complaint to review, including the evidence upon which the University does not intend to rely in reaching a determination regarding responsibility, and inculpatory and exculpatory evidence whether obtained from a party or other source. Each party will be given a minimum of 10 days to submit a meaningful written response, which the Investigator will consider prior to finalizing the Investigative Report.

After the 10-day review period, the Investigator will finalize the Investigative Report summarizing relevant evidence. At least 10 days prior to a hearing, the Investigator will send to each party and the party's Advisor, if any, the Investigative Report for their review and written response. Additionally, each party will be provided at least 10 days to submit meaningful written response to the Investigative Report prior to the Live Hearing. If either party disagrees with the Investigator's determination about relevance, the party can raise that issue in the party's written response to the Investigator's Report and/or to the Decision-maker(s) at the Live Hearing.

The Title IX Coordinator will review the Investigative Report and determine whether to dismiss the formal complaint for Title IX purposes using the criteria outlined in the Dismissing the Formal Complaint section above. If the formal complaint is not dismissed, the Title IX Coordinator will transmit the Investigative Report, including the parties' responses to the report, to the

Page 8 – COMPLAINT

The Brague Law Firm
4504 S  Corbett Avenue, Suite 250
Portland, Oregon  97239
503 922 2243

Decision-maker(s).

If an incident results in a Respondent being simultaneously charged with Title IX sexual harassment and other University policy violations that do not constitute sexual harassment, the University may choose to address all allegations according to the procedures outlined in this Policy or to address separate misconduct under a different policy.

Retaliation

The University of Portland strongly encourages students to report all incidents of sexual or gender-based harassment, misconduct, or violence. The University prohibits intimidation, retaliation, threats, harassment, or other types of conduct that attempts to prevent the reporting of such an incident or participation in an investigation, conduct process, or other University process related to such an incident. Any individual who feels subjected to this type of conduct should immediately report their concerns to the Title IX Office, Student Conduct, or call Campus Safety.

Furthermore, this policy and Title IX prohibit retaliation against a complainant or witnesses for filing or participating in the investigation of a sexual harassment complaint.

No person at the University may intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by Title IX, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in a Title IX investigation, proceeding, or hearing.

Charges against an individual for a policy or code of conduct violation that does not involve sexual harassment, but arise out of the same facts or circumstances as a report of complaint of sex discrimination, or a report or formal complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX, constitutes retaliation.

In addition to the prohibitions against retaliation outlined in this process, the University prohibits participants and others from engaging in disrespectful communication, slander, libel, or dishonesty related to any person's reporting of sexual harassment or participation in the Title IX Grievance Process. Those prohibitions are further described in the University's Student Code of Conduct, Faculty Handbook, Human Resources policies, and/or other relevant departmental or university policies. The University will investigate any reports of retaliation and take appropriate disciplinary action. State and federal law also provide protections for whistleblowers who bring allegations of non-compliance with the Clery Act and/or Title IX to the attention of appropriate campus administrators. Any concerns regarding retaliation should be brought to the immediate attention of the campus Title IX Coordinator.

Page 9 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

EXHIBIT A
Page 9 of 24

_Verified Correct Copy of Original 8/26/2022_

_Verified Correct Copy of Original 8/26/2022._

<u>Effective Date</u>
This Policy is effective as of August 14, 2020 and will be applied to conduct that occurs on or after August 14, 2020.

16.

Shortly after being expelled from UP's Volleyball Team Gregg and her parents complained about UP's treatment of Gregg and activities and inaction of UP's Title IX Office.

17.

Subsequent to her expulsion from UP's Volleyball Team Gregg sought to provide to UP her own account of what she witnessed.  UP, its agents, and its Title IX office refused to listen to Gregg and refused to interview or investigate the incident.

18.

Gregg was never allowed to actively return to UP's Volleyball Team and missed opportunities to document her talents for future playing opportunities for other universities, colleges, and graduate schools.

19.

UP received and continues to receive Federal financial assistance through student loans, Federal grants including Pell Grants, and the CARES Act.

**FIRST CLAIM FOR RELIEF**

(Breach of Contract)

(University of Portland)

20.

Gregg realleges and incorporates by reference paragraphs 1 through 19 above.

21.

Gregg has performed all conditions precedent to her contract with UP.

////

////

Page 10 – COMPLAINT

The Brague Law Firm
4504 S  Corbett Avenue, Suite 250
Portland, Oregon  97239
503 922 2243

_Verified Correct Copy of Original 8/26/2022._

22.

UP offered admission to Gregg for its undergraduate program which she accepted. Gregg then undertook classes at UP and participated as a college athlete on UP's Women's Volleyball team.

23.

The contract between UP and Gregg consists of admission or enrollment agreements, UP's Catalogs, Student Handbook, Title IX Policy, Athletic policies, scholarship awards, and UP's bulletins, circulars, policies, and regulations which were made available to Gregg.

24.

UP breached its contract with Gregg in the following particulars:

a.    By falsely accusing Gregg of sexual harassment as defined by UP's Title IX Sexual Harassment Policy;

b.    By expelling Gregg from UP's Volleyball Team pursuant to UP's Title IX Sexual Harassment Policy;

c.    By expelling Gregg from UP's Volleyball Team based on a false claim of sexual harassment;

d.    By expelling Gregg from UP's Volleyball Team under the guise of an investigation under UP's Title IX Sexual Harassment Policy;

e.    By failing to follow UP's Title IX Sexual Harassment Policy in failing to provide notice to Gregg as sexually harassing any person;

f.    By failing to provide supportive measures as required by UP's Title IX Sexual Harassment Policy;

g.    By implementing Sanctions under UP's Title IX Sexual Harassment Policy without following UP's Title IX Sexual Harassment Grievance Process, Title IX investigation process, live hearing, or providing written determination; and

Page 11 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon  97239
503 922 2243

_Verified Correct Copy of Original 8/26/2022._

h.    By retaliating against Gregg for complaints to UP's Athletic Department and agents, and its Title IX office for their failure to follow UP's Title IX Sexual Harassment Policy.

25.

As a natural and necessary result of UP's breach of contract, Gregg is damaged by loss of educational opportunities and scholarships, loss of future income, and loss of the benefit of the bargain in an amount to be proved at trial, but not more than $150,000.00.

**SECOND CLAIM FOR RELIEF**

(Negligence)

(University of Portland)

26.

Gregg realleges and incorporates by reference paragraphs 1 through 25 above.

27.

UP owes a special duty to Gregg as professionals and educators in acting on Gregg's behalf in directing and controlling her education, scholarship, schedule, athletic training, rehabilitation, meetings, and student athletic career.

28.

UP breached its special duty to Gregg, as alleged above and incorporated herein, by failing to exercise reasonable care under its own policies and contractual obligations in the performance of its official duties:

a.    By accusing Gregg of sexual harassment;

b.    By expelling Gregg from UP's Volleyball team;

c.    By expelling Gregg from UP's Volleyball team based on a false claim of sexual harassment

d.    By expelling Gregg from UP's Volleyball team under the guise of an investigation under UP's Title IX Sexual Harassment Policy;

Page 12 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

EXHIBIT A
Page 12 of 24

Verified Correct Copy of Original 8/26/2022_

e. By failing to follow UP's Title IX Sexual Harassment Policy in reasonably investigating and identifying Gregg as sexually harassing any person;

f. By failing to provide supportive measures as required by UP's Title IX Sexual Harassment Policy;

g. By implementing Sanctions under UP's Title IX Sexual Harassment Policy without following UP's grievance process, Title IX investigation process, live hearing, or providing written determination; and

h. By retaliating against Gregg for complaints to UP's Athletic Department, its agents, and Title IX office for their failure to follow UP's Title IX Sexual Harassment Policy.

29.

As a proximate and foreseeable result of UP's negligence, Gregg suffered economic damages in an amount to be proved at trial but not exceeding $150,000.00.

30.

As a result of UP's failure to act with due care on behalf of Gregg, Gregg suffered anxiety and stress all to her non-economic damages in an amount to be proven at trial, but no more than $350,000.

## THIRD CLAIM FOR RELIEF

(Defamation)

( and Burton)

31.

Gregg realleges and incorporates by reference paragraphs 1 through 30 above.

32.

In September 2021 Defendant made statements that Gregg orchestrated, conspired, and assisted in perpetuating a sexual encounter or assault upon

Page 13 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

_Verified Correct Copy of Original 8/26/2022._

33.

In September 2021 Defendant Coach Burton repeated ███ statements that Gregg orchestrated, conspired, and assisted in perpetuating a sexual encounter or assault upon ███ knowingly or in reckless disregard of their truth.

34.

Defendants' statements about Gregg are false and defamatory because Gregg sought to assist ███ sought to comfort and help her, and did not introduce ███ to her young man that ███ chose to escort into the basement while under the influence.

35.

Defendants ███ and Burton made their defamatory statements to third persons on UP's Volleyball Team and others.

36.

UP Volleyball Team members and others reasonably understood that Defendants ███ and Burton's statements were about Gregg and were defamatory.

37.

As a result of Defendants' defamatory statements Gregg was removed (expelled) from UP's Volleyball Team, lost opportunities to play, lost educational opportunities, suffered damage to her personal, educational, and professional relationships, and suffered damage to her reputation.

38.

As a result of Defendants' defamatory statements, Gregg is damaged for her removal (expulsion) from UP's Volleyball Team, lost opportunities to play, lost educational opportunities, suffered damage to her personal, educational, and professional relationships, and suffered damage to her reputation in an amount to be proved at trial, but not greater than $500,000.00.

Page 14 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

_Verified Correct Copy of Original 8/26/2022._

## FOURTH CLAIM FOR RELIEF

### (Title IX Retaliation)

### (University of Portland)

39.

Gregg realleges and incorporates by reference paragraphs 1 through 38 above.

40.

Shortly after Gregg's removal from UP's Volleyball team, she and her parents made complaints to UP, its Athletic Department, its agents, and its Title IX office and agents about her removal, the Title IX process, lack of investigation, and lack of following policies.

41.

As a result of Gregg and her parents' complaints to UP, its Athletic Department, its agents, and its Title IX office and agents, UP expelled, excluded, and prevented Gregg from participating with UP's Volleyball Team, excluding her from the athletic department and locker room, denying her physical training and physical therapy services, and excluding her generally from the athletic center.

42.

UP's administrators, agents, and employees continued to exclude Gregg from participation with the Volleyball Team and athletic department, as a whole, knowing there was no Title IX investigation, no truthful allegations against Gregg, and no honest basis for her exclusion and expulsion from the Volleyball Team and athletic department.

43.

As a natural and necessary result of UP's retaliation, Gregg is damaged by loss of educational opportunities and scholarships, garden variety stress and anxiety, loss of future income, loss of the benefit of the bargain, and in an amount to be proved at trial, but not more than $150,000.00.

Page 15 – COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

EXHIBIT A
Page 15 of 24

Verified Correct Copy of Original 8/26/2022.

1    WHEREFORE, Gregg prays for the following relief:

2        1.    On her First Claim for Relief, for actual, consequential, and foreseeable damages

3    to be proven at trial and as determined by a jury, but which Gregg presently estimates do not

4    exceed $150,000.00.

5        2.    On her Second Claim for Relief, for actual, consequential, and foreseeable

6    damages to be proven at trial and as determined by a jury, but which Gregg presently estimates

7    do not exceed $500,000.00.

8        3.    On her Third Claim for Relief, for actual and proximately caused foreseeable

9    economic and noneconomic damages to be proven at trial and as determined by a jury, but

10   which do not exceed $500,000.00.

11       4.    On her Fourth Claim for Relief, for actual and proximately caused foreseeable

12   economic and noneconomic damages to be proven at trial and as determined by a jury, but

13   which do not exceed $150,000.00.

14       5.    For Gregg's attorney fees pursuant to 42 USC § 1988.

15       6.    For Gregg's costs and disbursements herein.

16       7.    For any and all other relief the Court deems just and equitable.

17

18   DATED this 16th day of August, 2022.

19                           THE BRAGUE LAW FIRM

20                           By:_____

21                              Kevin C. Brague, OSB No. 050428
                                kevin@braguelawfirm.com
22                              4504 S. Corbett Avenue, Suite 250
                                Portland, OR 97239
23                              t: 503.922.2243
                                f: 503.296.2046
24                              Attorneys for Plaintiff

25

26

Page 16 – COMPLAINT

FILED

22 AUG 23 PH 2:31

4 TH JUDICIAL DIST.

IN THE CIRCUIT COURT OF THE STATE OF OREGON

IN AND FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| RYANN GREGG, | ) Case No. 22CV27382 |
| | ) |
| Plaintiff, | ) **MOTION FOR LEAVE TO APPEAR** |
| | ) **AND PROCEED ANONYMOUSLY** |
| v. | ) **AND MOTION TO SEAL** |
| | ) **COMPLAINT** |
| UNIVERSITY OF PORTLAND; MEGAN | ) |
| BURTON, and JANE DOE; | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MOTION**

Defendant Jane Doe, upon information and belief, was at all material times a student at Defendant University of Portland and may have experienced an unwanted sexual encounter. Defendant Jane Doe's age and date of birth is unknown. Due to the sensitivity concerning Jane Doe's alleged experiences at Defendant University of Portland and the uncertainty of her age, Plaintiff moves the court for an order allowing this matter to proceed anonymously against Jane Doe.

Plaintiff further moves to seal the original complaint since a First Amended Complaint was filed using Jane Doe.

**POINTS AND AUTHORITIES**

Plaintiff requests to proceed against Jane Doe anonymously due to personal embarrassment. See, *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-1068 citing *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981).

Page 1 – MOTION FOR LEAVE TO APPEAR AND PROCEED
ANONYMOUSLY AND MOTION TO SEAL COMPLAINT

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922.2243

EXHIBIT A
Page 17 of 24

Verified Correct Copy of Original 8/24/2022

Verified Correct Copy of Original 8/24/2022

It does not appear that an Oregon appellate court has ruled upon motion to proceed anonymously, but the 9th Circuit provides some guidance.

To determine whether to allow a party to proceed anonymously when the opposing party has objected, a district court must balance five factors: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest. *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1042 (9th Cir. 2010).

A.    Severity of Threatened Harm.

Disclosure of Jane Doe's identity carries the threat of significant harm because the spectre is raised that she may be the victim of a sexual assaults and disclosure may stigmatize her future education and work aspirations.

B.    Reasonableness of Fears.

The availability of information is now so pervasive that while Plaintiff seeks to vindicate her rights as to Defendants does not necessarily mean that Defendant Jane Doe must also disclose private, intimate personal information.

C.    Anonymous Party's Vulnerability to Retaliation.

Widespread disclosure of Jane Doe's experiences may render her vulnerable to others taking advantage of her, judging her, and potentially denying her opportunities. Websites pulling information from public records may also include this litigation leaving Jane Doe to re-live these experiences for her entire life.

D.    Prejudice to the Opposing Party.

There is little to no prejudice to the opposing party because the pseudonym of Jane Doe on pleadings and motions filed with the court and into the public record will not prevent Defendant from knowing her real identity.

Page 2 – MOTION FOR LEAVE TO APPEAR AND PROCEED ANONYMOUSLY AND MOTION TO SEAL COMPLAINT

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon  97239
503 922 2243

E.    <u>Public Interest.</u>

The public interest is served by the issues being litigated and not the personal identity of the defendant. *Advanced Textile Corp*, supra, at 1073.

## CONCLUSION

Based on the foregoing, Plaintiff requests the court grant leave for Defendant Jane Doe to appear and proceed anonymously.

DATED this 22nd day of August, 2022.

THE BRAGUE LAW FIRM

By: _____

Kevin C. Brague, OSB No. 050428
*kevin@braguelawfirm.com*
4504 S. Corbett Avenue, Suite 250
Portland, OR 97239
t: 503.922.2243
f: 503.296.2046
Attorneys for Plaintiff

Page 3 – MOTION FOR LEAVE TO APPEAR AND PROCEED
ANONYMOUSLY AND MOTION TO SEAL COMPLAINT

The Brague Law Firm
4504 S. Corbett Avenue, Suite 250
Portland, Oregon 97239
503.922.2243

Verified Correct Copy of Original 8/24/2022

_Verified Correct Copy of Original 8/24/2022._

FILED
22 AUG 23 PM 2:43
⠃⠆⠄ JUDICIAL DIST.

IN THE CIRCUIT COURT OF THE STATE OF OREGON

IN AND FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| **RYANN GREGG,** | )  Case No.  22CV27382 |
| | ) |
| Plaintiff, | )  **ORDER** |
| | ) |
| v. | ) |
| | ) |
| **UNIVERSITY OF PORTLAND; MEGAN** | ) |
| **BURTON**, and **JANE DOE;** | ) |
| | ) |
| Defendants. | ) |
| | ) |

The Court, being fully informed of the facts and law, and upon Plaintiff's Motion to

Proceed Anonymously and seal the original Complaint, the Court HEREBY:

    ☒  Grants Plaintiff's Motion.

    ☐  Denies Plaintiff's Motion.

8/23/22

*Jim Malarazzo*

Page 1 – MOTION FOR LEAVE TO APPEAR AND PROCEED
ANONYMOUSLY AND MOTION TO SEAL COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon 97239
503 922 2243

_Verified Correct Copy of Original 8/24/2022._

Submitted by:

The Brague Law Firm
Kevin Brague, OSB No. 050428
503.922.2243

## UTCR 5.100 CERTIFICATION

This proposed order or judgment is ready for judicial signature because:

1. [ ]   Each party affected by this order or judgment has stipulated to the order or judgment, as shown by each party's signature on the document being submitted.

2. [ ]   Each party affected by this order or judgment has approved the order or judgment, as shown by each party's signature on the document being submitted or by written confirmation of approval sent to me.

3. [ ]   I have served a copy of this order or judgment on each party entitled to service and:

   a. [ ]   No objection has been served on me.
   b. [ ]   I received objections that I could not resolve with a party despite reasonable efforts to do so. I have filed a copy of the objections I received and indicated which objections remain unresolved.
   c. [ ]   After conferring about objections, _____ agreed to independently file any remaining objection.

4. [X] Service is not required pursuant to subsection (3) of this rule, or by statute, rule, or otherwise.

5. [ ] This is a proposed judgment that includes an award of punitive damages and notice has been served on the Director of the Crime Victims' Assistance Section as required by subsection (5) of this rule.

6. [ ] Other:

DATED this 22nd day of August, 2022.

THE BRAGUE LAW FIRM

By: _____
Kevin C. Brague, OSB No. 050428
kevin@braguelawfirm.com
4504 S. Corbett Avenue, Suite 250
Portland, OR 97239
t: 503.922.2243
f: 503.296.2046
Attorneys for Plaintiff

Page 2 – MOTION FOR LEAVE TO APPEAR AND PROCEED
ANONYMOUSLY AND MOTION TO SEAL COMPLAINT

The Brague Law Firm
4504 S Corbett Avenue, Suite 250
Portland, Oregon  97239
503 922 2243

1

2

3                    IN THE CIRCUIT COURT OF THE STATE OF OREGON

4                           FOR THE COUNTY OF MULTNOMAH

5    RYANN GREGG,

6                Plaintiff,                    Case No. 22CV27382

7        v.                                    ACCEPTANCE OF SERVICE ON
                                               BEHALF OF DEFENDANTS
8    UNIVERSITY OF PORTLAND; MEGAN             UNIVERSITY OF PORTLAND AND
     BURTON; and JANE DOE,                     MEGAN BURTON
9
                 Defendants.
10

11           I, Michael Porter, hereby declare that on behalf of University of Portland and

12   Megan Burton ("Defendants"), I am authorized to accept and I do hereby accept service of

13   plaintiff's summons and complaint (the "Pleadings"), as if the Pleadings had been served on

14   Defendants pursuant to ORCP 7.

15           I further certify that any irregularities or deficiencies in the method or manner of

16   service are hereby waived and that service was accomplished and effective on the date below.

17

18           DATED this 3rd day of October, 2022.

19                                        MILLER NASH LLP

20

21                                        _____
                                          Michael Porter, P.C.—Trial Attorney
22                                        OSB No. 003560
                                          mike.porter@millernash.com
23                                        Erin M. Burris, OSB No. 155379
                                          erin.burris@millernash.com
24                                        Phone: 503.224.5858
                                          Fax: 503.224.0155
25
                                          *Attorneys for Defendants University of Portland*
26                                        *and Megan Burton*


Page 1 -   Acceptance of Service on Behalf of Defendants University of Portland and Megan Burton

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

EXHIBIT A
Page 22 of 24

1

<u>CERTIFICATE OF SERVICE</u>

2

           I hereby certify that I served the foregoing Acceptance of Service on Behalf of

3

Defendants University of Portland and Megan Burton on the attorney(s) listed below on the date

4

set forth below by the method(s) indicated:

5

6
        Kevin C. Brague

        The Brague Law Firm

7
        4504 S Corbett Ave, Ste 250

        Portland, OR 97239

8
        Email: kevin@braguelawfirm.com

9
        *Attorney for Plaintiff*

| | |
|---|---|
| ☒ | First-class mail, postage prepaid |
| ☐ | E-mail, pursuant to ORCP 9 G |
| ☒ | E-mail copy, as a courtesy only |
| ☐ | OJD EFILING SYSTEM, if registered at the party's email address as recorded on the date of service in the eFiling system, pursuant to UTCR 21.100. |
| ☐ | Other |

10

11

          DATED this 3rd day of October, 2022.

12

13

14

15
          Michael Porter, P.C., OSB No. 003560

16
          *Of Attorneys for Defendants University of*

          *Portland and Megan Burton*

17

18
4853-4293-0741.1

19

20

21

22

23

24

25

26

Page 1 -    Certificate of Service

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

EXHIBIT A
Page 23 of 24

22CV27382

**AFFIDAVIT OF SERVICE**

| Case:<br>22CV27382 | Court:<br>CIRCUIT COURT OF THE STATE OF OREGON IN THE<br>COUNTY OF MULTNOMAH | County:<br>Multnomah, OR | Job:<br>7643373 (Ryann Gregg) |
|---|---|---|---|
| Plaintiff / Petitioner:<br>RYANN GREGG | | Defendant / Respondent:<br>UNIVERSITY OF PORTLAND; MEGAN BURTON;  and JANE DOE | |
| Received by:<br>A1 Process Servers LLC | | For:<br>Brague Law Firm | |
| To be served upon:<br>Gabby Quach | | | |

I, Mark Rovai, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

| Recipient Name / Address: | Daniel (subject's father), Home: 670 30th Ave, San Francisco, CA 94121 |
|---|---|
| Manner of Service: | Substitute Service - Abode, Sep 21, 2022, 7:40 pm PDT |
| Documents: | MOTION FOR LEAVE TO APPEAR AND PROCEED ANONYMOUSLY AND MOTION TO SEAL COMPLAINT;<br>ORDER;<br>COMPLAINT REDACTED;<br>SUMMONS |

**Additional Comments:**
1) Unsuccessful Attempt: Sep 15, 2022, 2:11 pm PDT at Home: 670 30th Ave, San Francisco, CA 94121
After knocking several times and ringing the doorbell, i received no answer at the front door.

2) Unsuccessful Attempt: Sep 16, 2022, 6:31 pm PDT at Home: 670 30th Ave, San Francisco, CA 94121
A resident answered the door and said the subject was unavailable because she is in San Diego. He tried to accept service for her but i informed him that i must give the documents to the subject personally. Resident described as an asian-american male, aged 50-60, 5'7" in height, black hair.

3) Successful Attempt: Sep 21, 2022, 7:40 pm PDT at Home: 670 30th Ave, San Francisco, CA 94121 SUBSTITUTE SERVICE received by Daniel (subject's father). Age: 55-60; Ethnicity: Asian American; Gender: Male; Weight: 170; Height: 5'6"; Hair: Black; Other: Resident named Daniel who identified as the subject's father. ;
Resident named Daniel who identified as the subject's father said the subject was not home, but he was willing to accept the documents on her behalf. He reached for the documents and i told him they were legal documents.

_____         09/22/2022
Mark Rovai                            **Date**
San Francisco County 2021-0001486

A1 Process Servers LLC
595 Pacific Ave Floor 4
San Francisco, CA 94133
415-933-1381

EXHIBIT A
Page 24 of 24