**Michael Porter, P.C.**, OSB No. 003560
mike.porter@millernash.com
**Erin M. Burris**, OSB No. 155379
erin.burris@millernash.com
MILLER NASH LLP
US Bancorp Tower
111 SW Fifth Ave, Ste 3400
Portland, OR  97204
Telephone:  503.224.5858
Facsimile:  503.224.0155

Attorneys for Defendants
University of Portland and Megan Burton

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| RYANN GREGG, | CV No. 3:22-cv-01680-JR |
| Plaintiff, | |
| v. | DEFENDANT UNIVERSITY OF PORTLAND'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND DEFENDANT MEGAN BURTON'S SPECIAL ANTI-SLAPP MOTION TO STRIKE PURSUANT TO ORS 31.150 |
| UNIVERSITY OF PORTLAND; MEGAN BURTON; and JANE DOE, | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Defendant University of Portland's Reply in Support of Its Motion to Dismiss and
Defendant Megan Burton's Special Anti-SLAPP Motion to Strike Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

# TABLE OF CONTENTS

Page

**LOCAL RULE 7-2 CERTIFICATION** ................................................................ **1**

**I.      INTRODUCTION** ........................................................................................ **1**

**II.     ARGUMENT** ................................................................................................ **2**

    A.    Plaintiff's Title IX-Retaliation Claim Should be Dismissed ................................ 2

        1.    Plaintiff's arguments highlight that she did not engage in any
            protected activity under Title IX .................................................................. 3

        2.    Plaintiff's arguments show that the alleged protected activity did
            not cause any adverse action ...................................................................... 4

    B.    Plaintiff's Breach-of-Contract Claim Should be Dismissed ................................ 5

        1.    Plaintiff's allegations do not show the existence of a contract ................. 5

        2.    The Title IX Policy did not apply to plaintiff and therefore, she has
            failed to plead any breach of its purported terms ..................................... 10

    C.    Plaintiff's Negligence Claim Fails as a Matter of Law ....................................... 11

        1.    Since plaintiff did not have a special relationship with the
            University, her negligence claim should be dismissed ............................. 11

        2.    Plaintiff fails to state a negligence claim because her allegations
            and arguments reflect that the University did not unreasonably
            cause a foreseeable risk of any harm to plaintiff ..................................... 14

**III.    BURTON'S ANTI-SLAPP MOTION SHOULD BE GRANTED** ........................... **14**

    A.    The Team Meeting Occurred in a Public Forum ................................................ 14

    B.    Campus Sexual Assault is a Matter of Public Interest ....................................... 16

    C.    The Defamation Claim is Meritless and Should be Dismissed ........................... 16

**IV.     CONCLUSION** ............................................................................................ **19**

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Austin v. Univ. of Oregon*,
    205 F Supp 3d 1214 (D Or 2016), *aff'd*, 925 F3d 1133 (9th Cir 2019) ...........................11, 13

*Bird v. Lewis & Clark Coll.*,
    104 F Supp 2d 1271 (D Or 2000), *aff'd* 303 F3d 1015 (9th Cir 2002)..............................6, 12

*Bird v. Lewis & Clark Coll.*,
    303 F3d 1015 (9th Cir 2002) ...............................................................................................12

*Breyer v. Pacific Univ.*,
    No. 3:17-cv-00036-AC, 2020 WL 1161434 (D Or Mar. 10, 2020)........................................9

*Breyer v. Pacific Univ.*,
    No. 3:17-cv-0036-AC, 2017 WL 3429395 (D Or Aug. 9, 2017) ...........................................7

*Cabrera v. Alam*,
    197 Cal App 4th 1077 (2011) .............................................................................................15

*Conway v. Pacific Univ.*,
    324 Or 231 Pd 818 (1996) ..................................................................................................13

*Cushman v. Day*,
    43 Or App 123, 125, 602 P2d 327 (1979) .....................................................................17, 18

*Emeldi v. Univ. of Oregon*,
    698 F3d 715 (9th Cir 2012) *cert. den.* 569 US 947, 133 S Ct 1997,
    185 L Ed 2d 866 (2013).....................................................................................................2, 3

*Fazzolari v. Portland School Dist. No. 1J*,
    303 Or 1, 734 P2d 1326 (1987) ....................................................................................11, 14

*Gallagher v. Capella Educ. Co.*,
    No. 3:19-cv-01342-JR, 2019 WL 8333532 (D Or Dec. 23, 2019),
    *adopted by* 2020 WL 1550729 (D Or Apr. 1, 2020), *aff'd* 2021 WL 6067015 (9th Cir 2021).......6

*Gibson v. Walden Univ., LLC*,
    66 F Supp 3d 1322 (D Or 2014) .........................................................................................9

*Jackson v. Birmingham Bd. of Educ.*,
    544 US 167, 184, 125 S Ct 1497, 161 L Ed 2d 361 (2005).....................................................3

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

*Marder v. Lopez*,
450 F3d 445, 448 (9th Cir 2006) ..................................................................8

*Dr. Eric Natkin, DO PC v. Am. Osteopathic Ass'n*,
No. 3:16-cv-01494-SB, 2017 WL 9049880, at *5 (D Or Aug. 30, 2017) ................8

*Onita Pacific Corp. v. Trustees of Bronson*,
315 Or 149, 843 P2d 890 (1992) ..................................................................13

*Paul v. Providence Health Sys.-Oregon*,
351 Or 587, 273 P3d 106 (2012) ..................................................................11

*Ross v. Creighton Univ.*,
957 F2d 410 (7th Cir 1992) ..........................................................................6

*Safari Club Int'l v. Rudolph*,
862 F3d 1113 (9th Cir 2017) ........................................................................16

*Sandie v. George Fox Univ.*,
3:18-cv-01339-AC, 2021 WL 1214792 (D Or Mar. 11, 2021), *report and
recommendation adopted*, No. 3:18-cv-01339-AC, 2021 WL 1206578
(D Or Mar. 30, 2021) ..................................................................................13

*T.L. ex rel. Lowry v. Sherwood Charter Sch.*,
68 F Supp 3d 1295 (D Or 2014), *aff'd sub nom.*, 691 F App'x 310 (9th Cir 2017) ................5

*Tate v. N. Pac. Coll.*,
70 Or 160, 140 P3d 743 (1914) ....................................................................6

*Wallulis v. Dymowski*,
323 Or 337, 343, 918 P2d 755 (1996) ..........................................................17

*Wani v. George Fox Univ.*,
No. 3:17-cv-01011-YY, 2018 WL 1702962 (D Or Feb. 22, 2018),
*report and recommendation adopted*, No. 3:17-CV-01011-YY, 2018 WL 1702048
(D Or Apr. 5, 2018) ....................................................................................13

*Wattenburg v. United Med. Labs., Inc.*,
269 Or 377, 525 P.2d 113 (1974) ..................................................................18

*Wieck v. Hostetter*,
274 Or App 457, 362 P3d 254 (2015)..............................................................9

*Zumbrun v. Univ. of So. Calif.*,
25 Cal App 3d 1, 101 Cal Rptr 499 (Ct App 1972) ..........................................6

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

*Zweizig v. Nw. Direct Teleservices, Inc.*,
    No. 3:15-cv-02401-HZ, 2016 WL 5402935 (D Or Sept. 24, 2016) ........................................15

**STATUTES**

ORS 31.150................................................................................................................................2, 14, 15

ORS 31.150(2)(c)......................................................................................................................15, 16

ORS 31.150(3).................................................................................................................................16

ORS 31.152(3)...................................................................................................................................2

**OTHER AUTHORITIES**

34 CFR § 106.71(a)...........................................................................................................................3

Fed R Civ P 12(b)(6).........................................................................................................................8

OEC 801(4).......................................................................................................................................16

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

## LOCAL RULE 7-2 CERTIFICATION

This reply brief complies with the applicable word-count limitation under

LR 7-2(b) because it contains 5,876 words, including headings, footnotes, and quotations, but

excluding the caption, table of contents, table of cases and authorities, signature block, exhibits,

and any certificates of counsel.[1]

## I.    INTRODUCTION

Plaintiff's lawsuit asserts that she is aggrieved by the way her university handled a

difficult situation. But a student's disagreement with the way their university handled a certain

matter, does not give rise to legal liability absent any viable statutory or common law claim. The

allegations of plaintiff's second amended complaint ("SAC") and her arguments in her response

brief to defendant University of Portland's (the "University's") Motion to Dismiss reflect

nothing more than her disagreement with how the University responded to plaintiff's perception

that her volleyball teammate, Jane Doe, blamed plaintiff for Doe's sexual assault by plaintiff's

acquaintance. Although Doe was assaulted at a party and her coach, Megan Burton, sought to

support Doe and all of the players on the volleyball team, somehow plaintiff has developed a

theory that her legal rights were violated. But plaintiff's allegations do not reflect that the

circumstances actually related to her rights under Title IX. Plaintiff's Title IX-retaliation claim

concerning her alleged removal from the volleyball team fails to allege required elements of such

a claim. Furthermore, plaintiff's claim that the University acted negligently by allegedly not

---

[1] Plaintiff's response brief does not comply with the applicable word-count limitation under
LR 7-2(b), to be under 11,000 words or under 35 pages. Plaintiff's memorandum contains
over 14,000 words and is well over 35 pages. Plaintiff did not seek court approval to submit
an over-length brief.

Page 1 -    Defendant University of Portland's Reply in Support of Its Motion to Dismiss
            and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike
            Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

following its Title IX Sexual Harassment Policy ("Title IX Policy") fails because plaintiff lacked

a special relationship with the University and the allegations do not reflect negligent conduct.

Similarly, plaintiff's breach-of-contract claim fails because she did not plead facts suggesting

that any contract existed with respect to the Title IX Policy, or that the University actually

breached it given that the Policy was not invoked.

Finally, plaintiff's defamation claim against her former coach, Megan Burton, is subject

to early dismissal pursuant to ORS 31.150, Oregon's Anti-Strategic Lawsuits Against Public

Participation ("Anti-SLAPP") statute permitting special motions to strike. Plaintiff's claim is

based on plaintiff's view that Burton adopted Doe's statements at a team meeting, but Burton's

purported statements were protected public speech made in connection with an issue of public

interest since they concerned Doe's sexual assault. Furthermore, plaintiff cannot show that her

defamation claim is likely to succeed on the merits, and this Court should therefore dismiss her

claim and award attorney fees and costs under ORS 31.152(3).

In sum, plaintiff's SAC is ripe for dismissal, defendants' Motions should be granted, and

judgment should be entered in their favor.

## II.    ARGUMENT

### A.    Plaintiff's Title IX-Retaliation Claim Should be Dismissed

Plaintiff's arguments in her response brief show that her Title IX-retaliation claim is

fundamentally flawed. To plausibly state a Title IX-retaliation claim, plaintiff must allege facts

that give rise to an inference that (1) she engaged in protected activity, (2) she suffered adverse

action by the University, and (3) her protected activity caused the adverse action. *Emeldi v. Univ.*

*of Oregon*, 698 F3d 715, 724 (9th Cir 2012) *cert. den.* 569 US 947, 133 S Ct 1997, 185 L Ed 2d

866 (2013). Plaintiff's allegations show that she did not engage in protected activity or that any

Page 2 -    Defendant University of Portland's Reply in Support of Its Motion to Dismiss
        and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike
        Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

alleged protected activity caused her alleged adverse action—that plaintiff was removed from the volleyball team. SAC §§ 15, 19; Plaintiff's Response at 17.

###     1.    Plaintiff's arguments highlight that she did not engage in any protected activity under Title IX.

Plaintiff's arguments in her response brief concerning her purported protected activities do not support her claim. In short, she argues that she engaged in protected activities that could lead to a retaliation claim. To assess that argument, one must evaluate what protected activity under Title IX actually is. In *Emeldi*, the Ninth Circuit explained that engaging in protected activity means to "'protest[] or otherwise oppose[] unlawful * * * discrimination.'" 698 F3d at 1225 (*quoting Moyo v. Gomez*, 40 F3d 982, 984 (9th Cir 1994) (protesting unlawful employment practice constitutes protected activity under Title VII)). "In the Title IX context, 'speak[ing] out against sex discrimination' * * * is protected activity." *Id.* (finding complaints about bias in favor of males was protected activity under Title IX) (*quoting Jackson v. Birmingham Bd. of Educ.*, 544 US 167, 184, 125 S Ct 1497, 161 L Ed 2d 361 (2005)). Title IX's implementing regulations provide that protected activity under Title IX includes instances when an "individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under this part." 34 CFR § 106.71(a).

Here, plaintiff argues in her response brief that she engaged in the following activities protected by Title IX: (1) she was prohibited from speaking to defend herself during a team meeting, (2) she participated in an "investigation, proceeding, or hearing," and (3) she complained to the Title IX Office after she was removed from the team. Plaintiff's Response at 16-17.

Page 3 -    Defendant University of Portland's Reply in Support of Its Motion to Dismiss and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

First, whether plaintiff could "defend" herself during a meeting is not protected activity. Plaintiff's wish to express a different view than Doe and not getting to share her (plaintiff's) thoughts in a meeting is not protected activity under Title IX because it does not reflect any complaint of sex discrimination or engagement with any Title IX process. Protected activity is an affirmative act, a protestation or involvement with a proceeding—simply remaining quiet during a meeting that is not a proceeding, investigation, or hearing is not a protected activity.

Second, plaintiff does not actually allege that she participated in any Title IX proceeding, and the team meeting was not a Title IX proceeding. In fact, plaintiff alleges that the Title IX Office allegedly "refused" to interview her or investigate the incident. SAC ¶ 18. Thus, plaintiff's allegations and arguments actually show that she did not participate in a Title IX proceeding.

Third, plaintiff's complaints to the Title IX Office about her alleged removal from the volleyball team and alleged "inaction" of the Title IX Office, SAC ¶¶ 17-18, 41, were not complaints of sex discrimination and are therefore not protected acts under Title IX.

Plaintiff alleged no protected activity under Title IX and her retaliation claim fails as a matter of law.

**2.    Plaintiff's arguments show that the alleged protected activity did not cause any adverse action.**

If any allegation of plaintiff's is considered protected activity, her claim still fails because the SAC does not allege any facts reflecting causation. Plaintiff argues that the timing between the meeting at which she was "prohibited from speaking and defending herself" and the alleged removal from the volleyball team reflects a causal connection between the two events. Plaintiff's Response at 17. But no factual allegations suggest that plaintiff not speaking at the meeting

Page 4 -    Defendant University of Portland's Reply in Support of Its Motion to Dismiss and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

would somehow lead to her alleged removal from the volleyball team. If anything, it seems plaintiff believes that she could have been spared removal if she had been permitted to speak, but that is not relevant to a Title IX-retaliation claim. She must allege facts that her protected activity caused the adverse action—and she does not.

Furthermore, plaintiff argues that her complaints to the Title IX Office about her alleged removal from the team somehow suggests causation for the removal itself or for continued removal. Plaintiff's Response at 17. But that reasoning emphasizes the inherent flaws in plaintiff's claim because the order of events she pleads do not state a retaliation claim. Characterizing her removal from the team as "ongoing" essentially admits that her claim suffers from a sequencing problem. It shows that plaintiff was first removed from the team, and only after her removal did she complain about the removal. *See T.L. ex rel. Lowry v. Sherwood Charter Sch.,* 68 F Supp 3d 1295, 1310-11 (D Or 2014), *aff'd sub nom.*, 691 F App'x 310 (9th Cir 2017) (granting summary judgment on part of Title IX-retaliation claim because a plaintiff had not asserted protected activity *before* the alleged adverse action).

Plaintiff's response brief attempts to create a loop of protected activities linked to the alleged removal from the team, but in fact, plaintiff's allegations reflect that she never engaged in any Title IX-protected activities and the activities that she identified did not cause her removal from the team. Plaintiff's Title IX-retaliation claim should be dismissed because, as a matter of law, her allegations do not state a claim.

### B. Plaintiff's Breach-of-Contract Claim Should be Dismissed

#### 1. Plaintiff's allegations do not show the existence of a contract.

Plaintiff's arguments in her response brief focus heavily on supposed precedent that describe the relationship between a student and college as "contractual *in nature*," but that

Page 5 -    Defendant University of Portland's Reply in Support of Its Motion to Dismiss and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

misses the importance of fundamental contract requirements. Many of those cases arise from student challenges to academic decisions that the plaintiffs asserted were arbitrary or made in bad faith, but that general framework does not fit the allegations of plaintiff's case. *See Tate v. N. Pac. Coll.*, 70 Or 160, 165, 169, 140 P3d 743 (1914) (challenging university's decision not to award plaintiff degree because plaintiff did not pass graduation requirements); *Gallagher v. Capella Educ. Co.*, No. 3:19-cv-01342-JR, 2019 WL 8333532, at *4-5 (D Or Dec. 23, 2019) (internal punctuation and citation omitted), *adopted by* 2020 WL 1550729 (D Or Apr. 1, 2020), *aff'd* 2021 WL 6067015 (9th Cir 2021) (challenging university's decision to disenroll plaintiff from graduate program due to unsatisfactory academic performance).

Moreover, many of the cases that plaintiff relies on concern purported contracts for specific educational services in exchange for tuition. *See Ross v. Creighton Univ.*, 957 F2d 410, 416 (7th Cir 1992) (emphasis added) (analyzing purported contract between student-athlete and university for specific educational services including tutoring and funds to allow plaintiff to complete his education); *see Zumbrun v. Univ. of So. Calif.*, 25 Cal App 3d 1, 6-7, 101 Cal Rptr 499, 504 (Ct App 1972) (analyzing purported contract for set number of sociology classes when professor went on strike halfway through the term). Those cases do not support plaintiff's contract claim because they do not analyze whether other written policies and publications were somehow incorporated into a contract, which is what plaintiff alleges here. Plaintiff points to *Breyer v. Pacific University* for its statement that Oregon law does not require "individualized agreements" for a breach-of-contract claim. However, the reality is that many of the cases that plaintiff relies on deal with individualized agreements, not a generalized policy that applies to every student and employee on campus. *See e.g.*, *Bird v. Lewis & Clark Coll.*, 104 F Supp 2d

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

1271, 1277 (D Or 2000), *aff'd* 303 F3d 1015, 1023 (9th Cir 2002) (specific agreements to accommodate plaintiff on overseas program).

Plaintiff relies heavily on broad brushes in cases about breach-of-contract claims at institutions of higher education that, when taken where plaintiff takes them, ignore fundamental contract principles of offer, acceptance, and mutual assent to be bound by the terms of a contract. The fact is that plaintiff has not alleged these foundational requirements and cannot do so. Plaintiff has not alleged that there is mutual assent—that the University assented to be bound by a particular policy or that plaintiff considered the University policy as part of her contractual relationship with the University. *Breyer v. Pacific Univ.*, No. 3:17-cv-0036-AC, 2017 WL 3429395, *4 (D Or Aug. 9, 2017) (requiring facts showing that "communications and overt acts suggest [the university] manifested intent to be bound by the statements and policies in its written documents, an issue of fact") (internal citations omitted).

Evidently to try to show the University's intent to be bound, plaintiff quoted a section of the University's website about Title IX, "What is Title IX?", and plaintiff argues that the passage affirms that the University "intended to be bound by the terms of Title IX."[2] Plaintiff's Response at 21. Importantly, plaintiff's new information emphasizes her view that not just the Title IX Policy, but all University publications offering information to its community about Title IX is somehow part of the purported contract. The first half of the website information that plaintiff offers is also contained nearly verbatim in the University's Student Handbook, Life on the Bluff,

---

[2] Plaintiff asserted new facts through a declaration ostensibly included for her response to Defendant Burton's Anti-SLAPP Motion and uses those facts in her argument about the motion to dismiss for failure to state a claim, although the facts are not alleged in the SAC. *See* Plaintiff's Response at 21.

Page 7 -    Defendant University of Portland's Reply in Support of Its Motion to Dismiss and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

which plaintiff also alleged is part of her contract with the University. SAC ¶ 24; *and see*

Declaration of Margaret Farra in Support of Defendant University of Portland's Reply in Support

of its Motion to Dismiss ("Farra Decl. 2"), ¶ 3, Ex. 1 at 70.[3] Life on the Bluff also includes other

information about Title IX for students, including specific references and website links to the

Title IX Policy that plaintiff alleges that the University did not follow. Farra Decl. 2. ¶ 3, Ex. 1

at 55-85. Critically, Life on the Bluff contains an express contract disclaimer. It states:

> All students are responsible for reading, knowing, and complying with the
> standards and expectations outlined in Life on the Bluff. **Life on the Bluff is not
> a contract between the student and the University, and the University
> reserves the right to expand or delete or otherwise modify the contents of
> Life on the Bluff whenever such changes are adjudged by it to be desirable or
> necessary.** Updates will be made to the online version of this handbook on an
> ongoing basis. Although notice is not required for any change to take effect, the
> University will make reasonable attempts to timely notify students of any changes
> through website or email postings, or other methods deemed appropriate by
> University. If there is a conflict between a policy in Life on the Bluff and
> applicable law or regulation, the University will abide by current governing laws
> and regulations. Additional policies governing academics at the University can be
> found in the University Bulletin. Students are responsible for following all
> applicable policies and regulations outlined in the University Bulletin.

---

[3] A court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F3d 445, 448 (9th Cir 2006). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (citation omitted); *see also Dr. Eric Natkin, DO PC v. Am. Osteopathic Ass'n*, No. 3:16-cv-01494-SB, 2017 WL 9049880, at \*5 (D Or Aug. 30, 2017) (applying incorporation by reference doctrine to consider contents of contract on motion to dismiss). Plaintiff incorporated by reference the University's Student Handbook, Life on the Bluff, by including the same text from other University publications, and because her complaint states that the contract also consists of the Student Handbook. *See* SAC ¶ 24. Life on the Bluff is therefore central to plaintiff's claim like the Title IX Policy as it forms part of her purported contract with the University, and no party questions the authenticity of the publication. The Court may therefore consider the contents of Life on the Bluff as true for purposes of the University's motion to dismiss. The University is attaching a copy of the Life on the Bluff as Exhibit 1 to the Declaration of Margaret Farra, which was in effect during the incidents alleged in the SAC.

Page 8 -    Defendant University of Portland's Reply in Support of Its Motion to Dismiss
and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike
Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Farra Decl. 2, ¶ 3, Ex. 1 at 4 (emphasis added). The Life on the Bluff disclaimer

therefore effectively disclaims the formation of a contract or an intent for the University to be

bound by the information contained in it, which includes the Title IX Policy or similar website

publications by their reference and incorporation into Life on the Bluff. *See Breyer v. Pacific

Univ.*, No. 3:17-cv-00036-AC, 2020 WL 1161434, at *38 (D Or Mar. 10, 2020) (finding no

contract between student and university existed based on disclaimer in university publication);

*Gibson v. Walden Univ., LLC*, 66 F Supp 3d 1322, 1324 (D Or 2014) (same).

Moreover, plaintiff's assertion that the University's website information reflects an intent

to be bound by the Title IX Policy undermines her position. The statements in the University's

publications about Title IX reflect its understanding of its legal obligations and seek to inform its

community about those processes. The assertion does nothing to suggest that that University

intended to be contractually bound by its Title IX Policy. Further, plaintiff made no allegations

reflecting that she mutually assented that the Policy was a contract either. Plaintiff therefore

does not plead any meeting of the minds as required under Oregon law. *Wieck v. Hostetter*,

274 Or App 457, 471, 362 P3d 254 (2015) (citation omitted). She relies on a loose principle

suggesting that every written publication of a university binds the parties regardless of any facts

suggesting that either party intended to be bound.

In sum, plaintiff's argument is that the court is free to ignore basic principles of contract

formation when evaluating a breach-of-contract claim against an institution of higher education.

But these principles are not shuttled away just because a student is suing a university, and the

consequence is that plaintiff has not pleaded a breach of contract claim. Plaintiff's breach-of-

contract claim should be dismissed.

Page 9 -    Defendant University of Portland's Reply in Support of Its Motion to Dismiss
            and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike
            Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

**2.    The Title IX Policy did not apply to plaintiff and therefore, she has failed to plead any breach of its purported terms.**

If one moves forward in a contract claim evaluation, plaintiff must still allege a breach. To allege a breach, plaintiff's allegations must actually reflect circumstances in which the University plausibly breached the purported contract—here, plaintiff alleges that the University did not follow the Title IX Policy. But her allegations do not, and plaintiff's arguments underscore this point. She argues that Title IX's implementing regulations include "participating in any manner in an investigation, proceeding, or hearing." Plaintiff's Response at 24. But plaintiff has not alleged that she participated in a Title IX proceeding. Her allegations suggest that she wanted a Title IX process or that she wanted to apparently be investigated as a responding party, but her allegations show that that did not occur because the Policy was not invoked. Plaintiff does not allege facts that she was a complainant or respondent to a Title IX proceeding. Therefore, the Title IX Policy did not apply, and no breach could have occurred.

Moreover, plaintiff argues that courts interpret Title IX broadly and she cites to a regulation about prohibited retaliation for participating in investigations, proceedings, or hearings. But there again, plaintiff's arguments just show that the Policy complies with legal requirements. How broad or narrow federal regulations might be interpreted by courts do not have any bearing on contract terms (if there were one). Plaintiff's arguments therefore undercut her own position.

In short, plaintiff did not have a contract with the University including the Title IX Policy, and she did not plausibly allege any breach of its terms since the Policy nonetheless did not apply to the circumstances that she alleged. Plaintiff's breach-of-contract claim should be dismissed.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

C.    **Plaintiff's Negligence Claim Fails as a Matter of Law**

1.    **Since plaintiff did not have a special relationship with the University, her negligence claim should be dismissed.**

Plaintiff recognizes that her only path to state a negligence claim for either economic or noneconomic damages is to plead facts plausibly suggesting that the University owed her a heightened duty of care beyond common law duties because she alleged no physical injury.[4] Response Brief at 24, 28. Plaintiff argues that her alleged special relationship with the University arose from the purported contract and because the University allegedly controlled plaintiff's education and activities. Response Brief at 28.

As explained in the University's Motion, a special relationship requires a circumstance in which one party "relinquishes over matters, usually financial" to the other party, the controlling party is "authorized to exercise independent judgment" to further the controlled party's interest. *Austin v. Univ. of Oregon*, 205 F Supp 3d 1214, 1229 (D Or 2016), *aff'd*, 925 F3d 1133 (9th Cir 2019). "In Oregon, those factors focus on one party's ability to exercise independent judgment on another party's behalf in order to advance that party's interests." *Id.* at 1229.

Plaintiff and the University did not have a special relationship. Her arguments that the University controlled course schedules is trivial and do not establish the required control and

_____

[4] As to economic damages, plaintiff must plead allegations reflecting not just any "special relationship," but a specific "duty to guard against the economic loss that occurred." *Paul v. Providence Health Sys.-Oregon*, 351 Or 587, 593, 273 P3d 106, 110 (2012). Plaintiff's allegations do not reflect that the purported special relationship defines the scope of duty to include protecting against economic loss. *See Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 10, 734 P2d 1326 (1987) (plaintiff must invoke a relationship that "creates, defines, or limits the defendant's duty"). Plaintiff's generalized conclusions that the parties shared a special relationship such that the University was "acting to further her economic interests vis-à-vis her education," *see* Plaintiff's Response at 28, is insufficient to support a claim for economic damages absent any allegations plausibly suggesting that the University had such a special duty.

Page 11 -  Defendant University of Portland's Reply in Support of Its Motion to Dismiss and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

exercise of independent judgment. After all, it is natural that a university would maintain class schedules if only for students and faculty to know when to show up for class. Plaintiff simply alleges no facts suggesting she relinquished financial control to the University or that she authorized the University to exercise independent judgment over her.

Plaintiff's reliance on *Bird v. Lewis and Clark College* does not help her. There, the court permitted a jury to decide whether the student had a special relationship with her college because the record showed that the college had worked closely with the plaintiff to provide specific disability accommodations, including physical modifications to the plaintiff's biology labs and dormitory. *Bird v. Lewis & Clark Coll.*, *supra*, 303 F3d 1015, 1023 (9th Cir 2002). The court held that the jury could have concluded that the plaintiff and her college had developed a special relationship arising in part from the plaintiff's trust in the college's specific assurances that it could similarly accommodate her disability during an overseas program, which included assurances about facilities for trips during the program and assurances to her parents. *Id.* Here, plaintiff's SAC contains no factual allegations like the circumstances in *Bird.* Plaintiff only makes conclusory and generalized allegations that the University "controlled" plaintiff's education and the argument about setting course schedules, but that is far afield of the individualized agreements between Bird and her college that suggested she and her college could have a special relationship arising from those particularized discussions.

Plaintiff further argues that her alleged special relationship with the University arises in part from their alleged contractual relationship, and she analogizes her relationship with the University to relationships arising from professional relationships, such as attorney-client or physician-patient relationships. Plaintiff's Response at 28. Those types of relationships can have

Page 12 -  Defendant University of Portland's Reply in Support of Its Motion to Dismiss
and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike
Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

heightened duties of care arising out of the nature of their relationship, whether created through

contract or otherwise, because the individual has been engaged for the purpose of protecting their

client's interests including a duty to guard against economic loss. *See Conway v. Pacific Univ.*,

324 Or 231, 237-40, 924 Pd 818 (1996) (finding no special relationship between university

employer and employee and describing professional relationships); *and see Onita Pacific Corp.*

*v. Trustees of Bronson,* 315 Or 149, 158-60, 843 P2d 890 (1992). But here, the relationship

between a university and student is nothing like a professional services relationship. Students

enroll in college for a variety of personal reasons including to pursue higher education and to

fulfill their own unique personal goals; while a university may support a student's goals, it is not

specially charged with protecting each student's personal and economic interests, like a

professional service provider often is with their client. In addition to plaintiff's arguments that

her tort claim arises from her purported contract with the University, plaintiff also asserts that her

tort claim is distinct from her contract claim. Plaintiff's Response at 27. However, her arguments

that she has a distinct tort claim do not suggest that she had a special relationship with the

University because, again, she did not plead facts reflecting a special relationship.

  As explained in the University's Motion, Oregon courts have found that generally

universities and students do not have a special relationship. *See Austin*, 205 F Supp 3d at 1229

(finding no special relationship between student-athlete and university); *Sandie v. George Fox*

*Univ.*, 3:18-cv-01339-AC, 2021 WL 1214792, at *12 (D Or Mar. 11, 2021), *report and*

*recommendation adopted*, No. 3:18-cv-01339-AC, 2021 WL 1206578 (D Or Mar. 30, 2021)

(finding no special relationship between student and university); *Wani v. George Fox Univ.*, No.

Page 13 - Defendant University of Portland's Reply in Support of Its Motion to Dismiss
and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike
Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

3:17-cv-01011-YY, 2018 WL 1702962, at *4 (D Or Feb. 22, 2018), *report and recommendation*

*adopted*, No. 3:17-CV-01011-YY, 2018 WL 1702048 (D Or Apr. 5, 2018) (same).

Therefore, plaintiff's negligence claim should be dismissed as a matter of law.

>    **2.    Plaintiff fails to state a negligence claim because her allegations and arguments reflect that the University did not unreasonably cause a foreseeable risk of any harm to plaintiff.**

Plaintiff's arguments in her response brief do not suggest that she alleged sufficient facts

to state a negligence claim. Plaintiff must allege facts that plausibly suggest that a plaintiff must

show that that the University's conduct "unreasonably created a foreseeable risk to a protected

interest of the kind of harm that befell the plaintiff." *Fazzolari By and Through Fazzolari v.

Portland Sch. Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). Plaintiff's arguments in her

response brief merely restate her allegations. Simply because a student disapproves of the way an

institution responds to certain information does not suggest that it has acted negligently toward

that student. Plaintiff's negligence claim fails to state a claim and should be dismissed.

## III.    BURTON'S ANTI-SLAPP MOTION SHOULD BE GRANTED

Plaintiff's arguments and purported factual support in response to Megan Burton's Anti-

SLAPP Motion highlights the weaknesses of her defamation claim. The defamation claim lacks

merit and it is ripe for dismissal under ORS 31.150 before any additional resources need to be

expended in defending the claim.

### A.    The Team Meeting Occurred in a Public Forum.

Plaintiff argued in her response brief to Burton's Anti-SLAPP Motion that the meeting in

which Burton allegedly made defamatory statements was not a public forum. She bases her

argument on the assertion in part by arguing that the meeting was that the meeting was "secret"

Page 14 -  Defendant University of Portland's Reply in Support of Its Motion to Dismiss
and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike
Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

and late at night. Plaintiff's arguments that the team meeting was a "secret, late night, closed door meeting" do not mean that it was not a public forum for purposes of ORS 31.150(2)(c).

As an initial matter, plaintiff argues that *Cabrera v. Alam* is inapplicable to the public forum analysis because it is a California case, but of course, as explained, Oregon courts look to California case law concerning the application of Oregon's Anti-SLAPP statute. *Zweizig v. Nw. Direct Teleservices, Inc.*, No. 3:15-cv-02401-HZ, 2016 WL 5402935, at *2 (D Or Sept. 24, 2016). Plaintiff essentially argues that the meeting was not a public forum because it was not a broadcasted public event. But the meeting here is quite similar to the meeting in *Cabrera v Alam*. In *Cabrera*, the meeting was an annual homeowner's association meeting concerning an election for the association's board of directors, and there is no suggestion that members of the general public outside of individuals involved with the condominiums were invited to participate. *Cabrera v. Alam*, 197 Cal App 4th 1077, 1087-88 (2011). Just like in *Cabrera*, the meeting here was open to plaintiff's volleyball team and coaching staff, who were the relevant individuals to the conversation. Plaintiff's repetitive assertions that the meeting was "secret" does not support her arguments that it was not a public forum because the meeting was known to the relevant participants, and the fact that it was not during daytime is also irrelevant to whether Burton's statements were made in a public forum as that term is used in ORS 31.150. The conversation occurred in the University's meeting space designated for and available for all types of events, social gatherings, press conferences, and meetings. Declaration of Megan Burton in Support of Defendant Megan Burton's Special Anti-SLAPP Motion to Strike ("Burton Decl."), ¶ 6. Doe's private experience was made public to her team and the coaching staff in the forum that Burton arranged for that purpose. The meeting therefore occurred in a public forum.

Page 15 -  Defendant University of Portland's Reply in Support of Its Motion to Dismiss
          and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike
          Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

### B.    Campus Sexual Assault is a Matter of Public Interest.

Plaintiff argues that since Doe and plaintiff are not public figures, that Burton's alleged statements were not made in connection with an issue of public interest under ORS 31.150(2)(c). However, plaintiff cites no law suggesting that the speaker or listener must be public figures for the alleged defamatory statements to be in connection with a matter of public interest. While the Ninth Circuit has recognized that sometimes matters of public interest include those involving a public person or entity, it also stated simply that matters of public interest are also those on a "topic of widespread, public interest." *Safari Club Int'l v. Rudolph*, 862 F3d 1113, 1122 (9th Cir 2017) (citations omitted). Sexual assaults on college campuses are an undeniably important issue that the public is keenly invested in openly discussing and preventing, and it is a matter of "widespread, public interest."

Therefore, Burton has satisfied her burden to make a prima facie showing that the defamation claim against her arises out of protected speech under ORS 31.150(2)(c).

### C.    The Defamation Claim is Meritless and Should be Dismissed.

Plaintiff has not shown that there is a probability that she will prevail on her defamation claim under ORS 31.150(3). Plaintiff argues that Burton should be liable for defamation because according to plaintiff, (1) Doe was an alleged "agent" of Burton's or (2) that Burton allegedly "adopted Jane Doe's statements as true and as her own" by permitting Doe to speak at the meeting. Plaintiff attempts to support these arguments by citing to an evidentiary exception to hearsay, OEC 801(4)(b), and to a few cases that do not support her position.

First, the hearsay rule simply describes statements that are excluded from the definition of hearsay. *See* OEC 801(4). That rule has no bearing on plaintiff's otherwise unsupported theories concerning her defamation claim.

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

Next, the cases plaintiff cites do not support her theories. Plaintiff argues that *Wallulis v. Dymowski* means that defamation liability can be imputed from one person to another, such as from Doe to Burton. But *Wallulis* does not stand for that proposition. There, the Oregon Supreme Court considered a defamation claim involving two AT&T employees because the defendants argued that the statements were not "published" for purposes of a defamation claim since the statements at issue were made between company employees. *Wallulis v. Dymowski*, 323 Or 337, 343, 918 P2d 755 (1996). The Court held that "a defamatory communication from one corporate employee to another corporate employee concerning the job performance of a third employee is 'published' for the purpose of a defamation claim." *Id.* at 347. That holding does not support plaintiff's argument that Burton was responsible for Doe's statements. The Court also held in *Wallulis* that a union steward could be an agent of both the union and the employer for purposes of a contribution claim, which of course is not relevant to plaintiff's defamation claim. *Id.* at 354-55. Plaintiff also argues that Burton is responsible for Doe's statements in the meeting by citing to *Cushman v. Day* for the proposition that when a portion of a small group of individuals are defamed by an individual's statements about the group, then every individual in the group might have been defamed. Plaintiff's Response at 37-38. However, that case does not support her arguments. In *Cushman*, a group of police officers were managing a group of picketers along a road. 43 Or App 123, 125, 602 P2d 327 (1979). Later that day, someone made negative comments about the group of police officers to a newspaper and some of the officers then sued for defamation. *Id.* at 125-26. The defendant argued that since their statements had not personally identified any officer, and rather had only described the officers as a group, that the individual officers could not have been defamed. *Id.* at 128-29. The court disagreed, and held

Page 17 -  Defendant University of Portland's Reply in Support of Its Motion to Dismiss and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

that even though the defamatory statements did not specifically identify any individual officer at the scene, a reader could conclude that the defamatory statements applied to all officers present. *Id.* at 129. That situation is different than the circumstances that plaintiff alleges. Unlike *Cushman*, in which the court was analyzing whether a statement about a defamed group might lead to each member having grounds for a defamation claim, plaintiff is arguing that the speaker's liability is imputed to another person. *Cushman* does not support plaintiff's argument.

Plaintiff's attempts to fit her circumstances into defamation liability for Burton highlights the obvious problems with her claim. Even if Burton had parroted exactly what Doe allegedly said in the meeting about plaintiff, frankly none of those statements could constitute defamation anyway. *See* Declaration of Ryann Gregg in Support of Response to Defendant Burton's Anti-SLAPP Motion to Strike ("Gregg Decl."), ¶ 9. Doe's purported statement plainly shows that Doe did not accuse plaintiff of conspiracy to sexually assault Doe or any of the other potentially "defamatory" statements that plaintiff pleaded in paragraph 13 of the SAC, so it is inconceivable that Burton could have. *See* Gregg Decl., ¶ 9.

Finally, even if plaintiff could somehow show that Burton made defamatory statements (and the evidence does not), Burton's statements would be conditionally privileged. "A statement is conditionally privileged if: (1) it was made to protect the interests of defendants; (2) it was made to protect the interests of plaintiff's employer; or (3) it was on a subject of mutual concern to defendants and the persons to whom the statement was made." *Wattenburg v. United Med. Labs., Inc.*, 269 Or 377, 380, 525 P.2d 113, 114 (1974). Here, Burton's statements at the meeting were on a subject of mutual concern to Burton and the listeners, the team, and the coaching staff. Burton made supportive statements to the team and suggested emotional support resources.

Page 18 -   Defendant University of Portland's Reply in Support of Its Motion to Dismiss and Defendant Megan Burton's Special Anti-SLAPP Motion to Strike Pursuant to ORS 31.150

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204

In sum, plaintiff has not and cannot show that there is a probability that plaintiff will prevail on her defamation claim because the facts reflect that Burton did not make any defamatory statements. Burton's Anti-SLAPP Motion should be granted and Doe's defamation claim should be dismissed.

## IV.    CONCLUSION

While plaintiff's indignation in tone in response to the University's and Burton's Motions may insinuate that some claim must be viable or that her defamation claim is likely to succeed, plaintiff's SAC and her response brief reveals significant flaws in her claims. Plaintiff's Title IX-retaliation claim lacks allegations reflecting required elements, so her claim fails. Plaintiff failed to plead the existence of a contract or any breach of its terms. Further, plaintiff has no special relationship with the University necessary to sustain her negligence claim.

Finally, Burton's statements in the team meeting were protected as they were made in a public forum about a matter of public interest, and in any event, plaintiff's defamation claim is meritless and should be dismissed.

DATED this 24th day of February, 2023.

MILLER NASH LLP

s/*Erin M. Burris*
Michael Porter, P.C., OSB No. 003560
mike.porter@millernash.com
Erin M. Burris, OSB No. 155379
erin.burris@millernash.com

*Attorneys for Defendants University of Portland and Megan Burton*

4889-5312-8785.1

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OREGON 97204