IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RYANN GREGG, | Case No. 3:22-cv-01680-JR |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| UNIVERSITY OF PORTLAND and MEGAN BURTON, | |
| Defendants. | |

RUSSO, Magistrate Judge:

      Defendants the University of Portland ("UP") and Megan Burton move to dismiss plaintiff Ryann Gregg's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Oregon's Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, Or. Rev. Stat. § 31.150. Oral argument was held on March 8, 2023. For the reasons stated below, defendants' motion should be granted.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

At all relevant times, plaintiff attended UP on "a five-year athletic scholarship based on her skill and abilities in Women's Volleyball." Second Am. Compl. ("SAC") ¶ 7 (doc. 8). On September 11, 2021, plaintiff attended "a birthday party for two UP Volleyball Team members [which] occurred at a team member's house." *Id.* at ¶ 8. During the party, plaintiff's team member, "Jane Doe," was under the influence of alcohol and "flirting, and kissing a young man." *Id.* at ¶ 9. Jane Doe and this individual eventually "went to the basement of the house alone." *Id.* Shortly thereafter, UP Campus Security arrived on scene and broke up the party in response to a noise complaint. *Id.* Plaintiff and her boyfriend went to the basement to let Jane Doe know that they needed to leave. *Id.*

Plaintiff observed Jane Doe to be fully dressed as she entered the basement. *Id.* at ¶ 10. "Then, [plaintiff] noticed blood on Jane Doe's leg and asked her what had happened and asked everyone else to leave." *Id.* "Jane Doe stated she couldn't remember what happened" and plaintiff "escorted [her] upstairs to a teammate's room and the blood was cleaned from her leg." *Id.* "Another teammate drove Jane Doe home." *Id.*

On September 12, plaintiff contacted Jane Doe to see "how she was doing" and "offered her assistance and love." *Id.* at ¶ 11.

On September 14, Burton, the coach of the UP Women's Volleyball team, scheduled "a mandatory UP Volleyball Team meeting at 10:30 p.m. with all players being forbidden to speak except Jane Doe" (the "Meeting"). *Id.* at ¶ 12. During the Meeting, "Jane Doe read a prepared statement blaming [plaintiff] for her alleged sexual encounter and claiming [plaintiff] orchestrated, conspired, and promoted the alleged sexual encounter upon Jane Doe by her young man." *Id.*

Page 2 – FINDINGS AND RECOMMENDATION

Burton "repeated Jane Doe's statements" not through express speech but rather by "giving voice to Jane Doe [and] the imprimatur of her validation and the [UP] of those statements." *Id.* at ¶ 34; Pl.'s Resp. to Mot. Dismiss 36 (doc. 23).

On September 15, "UP placed Gregg on leave from UP's Volleyball Team and no longer allowed her to practice with the team or even enter the athletic center or locker room." SAC ¶ 15 (doc. 8). "[A]fter being expelled from UP's Volleyball Team [plaintiff] and her parents complained about UP's treatment of [plaintiff to] UP's Title IX Office." *Id.* at ¶ 17. Plaintiff "sought to provide to UP her own account of what she witnessed" but "UP, its agents, and its Title IX office refused to listen to [plaintiff] and refused to interview or investigate the incident." *Id.* at ¶ 18. To date, plaintiff has not been "allowed to actively return to UP's Volleyball Team." *Id.* at ¶ 19.

In November 2022, defendants timely removed plaintiff's complaint to this Court. Via her SAC, plaintiff asserts the following claims: (1) Title IX retaliation against UP; (2) breach of contract against UP; (3) negligence against UP; and (4) defamation against Burton.

## STANDARD

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes for the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Rather, to state a plausible claim for relief,

the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Bacca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

Defendants contend that dismissal of the SAC is warranted because plaintiff fails to allege specific facts reflecting the elements of each claim. Conversely, plaintiff asserts her claims are sufficiently plead and that defendants have improperly construed the relevant case law too narrowly.

I.   **Claims Against UP**

   A.   **Title IX Retaliation Claim**

UP argues that plaintiff's Title IX retaliation claim must be dismissed because she has not alleged the existence of a protected activity. Defs.' Mot. Dismiss 8-10 (doc. 16). Additionally, UP contends any allegedly improper conduct occurred before plaintiff complained to the Title IX office and therefore could not be considered retaliatory. *Id.*

Plaintiff argues that UP violated her "protected activity of defending herself when it prohibited her from speaking" during the Meeting. Pl.'s Resp. to Mot. Dismiss 16 (doc. 23). Plaintiff asserts that UP retaliated by permanently removing her from the volleyball team. *Id.*

Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although Title IX does not expressly provide a private right of action, in considering a claim of intentional gender discrimination in a university admission process, the Supreme Court found that Title IX is enforceable through an implied right of action for discrimination. *Cannon v. Univ. of Chicago,* 441 U.S. 677, 703, 709 (1979). A plaintiff can bring a gender-based discrimination claim under Title

IX by alleging "[r]etaliation against [the plaintiff] because [she] has complained of sex discrimination." *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012) (citations and internal quotations omitted).

A plaintiff may include direct evidence of retaliation or make out a prima facie case by showing (1) she was engaged in protected activity, (2) she suffered an adverse action, and (3) there was a causal relationship between the two. *Id.* For a claim under Title IX, a plaintiff must show the retaliatory conduct occurred because the plaintiff complained of sex discrimination. *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, 68 F.Supp.3d 1295, 1311 (D. Or. 2014). Deliberate indifference to known acts of harassment or teacher-student sex-based discrimination may violate Title IX. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999).

Initially, plaintiff has not alleged facts illustrating that Title IX is applicable. That is, plaintiff has not alleged that she was an individual complaining of sex discrimination. SAC ¶¶ 40-44 (doc. 8). While plaintiff and her family presented to the Title IX office, their complaint was "about her removal, the Title IX process, lack of investigation, and lack of following policies." *Id.* at ¶ 41. Further, plaintiff has not alleged that she was barred from earning her degree, nor has she put forward assertions her scholarship was revoked. *See generally id.*. Additionally, plaintiff does not allege UP's Title IX office conducted a formal or informal proceeding naming plaintiff as a respondent, or was otherwise required to do so. *Id.* at ¶¶ 40-44. Failure to allege facts that show Title IX was invoked is fatal to plaintiff's claim.

Nonetheless, to the extent plaintiff claims her desire to speak during the Meeting constituted a protected activity, this allegation does not appear in the SAC and instead was first raised in her opposition, and therefore cannot be considered for purposes of defendants' Rule

12(b)(6) motion.¹ Pl.'s Resp. to Mot. Dismiss 16 (doc. 23); *see also Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (when reviewing a Rule 12(b)(6) motion, "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (citation omitted). Further, plaintiff concedes that all players in attendance at the Meeting aside from Jane Doe were forbidden to speak, and thus fails to allege any particularized sex discrimination against plaintiff. SAC ¶ 12 (doc. 8).

Plaintiff's retaliation claim additionally fails considering the sequence of events as plead. Plaintiff alleges, "[s]hortly after [her] removal from UP's Volleyball team, she and her agents/parents made complaints to UP, its Athletic Department, its agents, and its Title IX office and agents about her removal, the Title IX process, lack of investigation, and lack of following policies." *Id.* at ¶ 41. Because plaintiff alleges removal from the team occurred before complaints were raised by her and her parents, plaintiff's removal cannot have been retaliatory. *Id.* at ¶¶ 41-43. At oral argument, plaintiff pointed to the fact that her parents contacted Burton to complain immediately after the Meeting—aside from the fact that this information appears in a declaration responding to Burton's anti-SLAPP motion and not the SAC itself—plaintiff does not indicate that her parents' complaint was centered on sex discrimination. Hearing (Mar. 8, 2023) (doc. 33). Defendants' motion should be granted as to plaintiff's Title IX claim.

### B.  Breach of Contract Claim

Defendant argues that plaintiff has not properly plead the existence of a contract nor any breach of its terms. Defs.' Mot. Dismiss 10-17 (doc. 16). Plaintiff maintains an enforceable

---

¹ Plaintiff also raised a number of new facts and allegations at oral argument. As addressed herein, "'new' allegations contained in the [plaintiff's declaration evidence or asserted at oral argument]" are outside of the purview of the Court's consideration at this stage in the proceedings. *Schneider*, 151 F.3d at 1197 n.1.

contract was created through UP's admission, scholarship, and enrollment agreements; catalogs; student handbook; Title IX Policy; and other circulars. SAC ¶ 24 (doc. 8). Plaintiff claims UP breached this contract by falsely accusing her of sexual harassment, expelling her from the volleyball team, and failing to follow its Title IX policy and grievance procedures. *Id.* at ¶¶ 25-26.

To establish a breach of contract claim under Oregon law, the "plaintiff must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or.App. 565, 570, 927 P.2d 1098 (1996) (citations and internal quotations omitted). Payment of tuition by a student in exchange for educational services provided by a college is "essentially contractual in nature." *Vejo v. Portland Pub. Sch.*, 204 F.Supp.3d 1149, 1175 (D. Or. 2016), *rev'd in part on other grounds*, 737 Fed.Appx. 309 (9th Cir. 2018) (citations omitted). Statements in course catalogs, handbooks, and other similar documents may establish a contractual agreement. *Id.*

However, "[t]o plausibly allege the existence of an enforceable contract, the plaintiff must present facts evincing that the college's communications and overt acts suggest it manifested intent to be bound by the statements and policies in its written documents." *Gallagher v. Capella Educ. Co.*, 2019 WL 8333532, *5 (D. Or. Dec. 23, 2019) (citations and internal quotations omitted), *adopted by* 2020 WL 1550729 (D. Or. Apr. 1, 2020), *aff'd*, 2021 WL 6067015 (9th Cir. Dec. 20, 2021), *cert. denied*, 143 S.Ct. 47 (2022). In other words, "the plaintiff must pinpoint an identifiable contractual promise that the defendant failed to honor." *Id.* (citations and internal quotations omitted); *see also Villard v. Capella Univ.*, 2017 WL 9253388, *2 (M.D. Fla. Dec. 21, 2017), *adopted by* 2018 WL 2011433 (M.D. Fla. Apr. 30, 2018) ("[b]ecause the terms of a student's implied contract with the university are set forth in the university's [academic materials], federal

Page 7 – FINDINGS AND RECOMMENDATION

courts have dismissed breach of contract claims against a university when the plaintiff fails to specify the particular rule or procedure that the university allegedly violated.").

An individualized agreement between a student and a university (such as specialized disability accommodation plans), where both parties have expressed a mutual intent to be bound, is more likely to constitute an enforceable contract. *See, e.g.*, *Gibson v. Walden Univ.*, 66 F.Supp.3d 1322, 1325 (D. Or. 2014). A university handbook may establish an enforceable contract where it contains an "Agreement Contract," that requires students to read, sign, and abide by provisions contained in the handbook. *Id.*

Plaintiff's contract claim fails in two critical ways. First, as explained above, plaintiff has not sufficiently plead that Title IX was invoked or applicable to the facts at issue, and thus any breach of contract claim predicated on provisions of UP's contingent Title IX policy fails. Second, plaintiff has not pinpointed an identifiable contractual promise that UP allegedly breached. Plaintiff has copy-pasted multiple pages of UP's Title IX policy wholesale but has not specified any discrete contractual provision or term at issue. SAC ¶ 16 (doc. 8). When explicitly asked at oral argument to identify the specific contractual promise that UP allegedly breached, plaintiff responded only in general terms and without any textual support - i.e., that UP had promised a Title IX process, and that plaintiff had a right to participate on the volleyball team and not be subject to false accusations.

Because a university's Title IX obligations stem from federal legislation, they do not evince an individualized contractual relationship with a student. To the extent plaintiff attempts to rely on the UP student handbook, that publication contains an express contractual disclaimer: "[This publication] is not a contract between the student and the University, and the University reserves the right to expand or delete or otherwise modify the contents…whenever such changes are

Page 8 – FINDINGS AND RECOMMENDATION

adjudged by it to be desirable or necessary." Defs.' Reply to Mot. Dismiss 8 (doc. 31). Defendants' motion should be granted as to plaintiff's breach of contract claim.

### C. Negligence Claim

UP argues that plaintiff's negligence claim fails because the SAC's allegations do not reflect that UP unreasonably created a foreseeable risk of harm to plaintiff, and UP does not owe plaintiff a heightened duty of care. Defs.' Mot. Dismiss 17-21 (doc. 16). In contrast, plaintiff contends that she was owed a special duty by UP (as professionals and educators), which was breached when UP failed to exercise reasonable care with regard to its own policies. SAC ¶¶ 28-29 (doc. 8). Plaintiff alleges false allegations of sexual harassment, failure to follow Title IX policy, retaliation, and wrongful termination from the volleyball team constituted negligence and caused plaintiff to experience economic and emotional damage. *Id.* at ¶¶ 29-31.

Emotional distress damages are generally not available in the absence of physical injury. Oregon law recognizes three instances in which a plaintiff may recover for emotional distress caused without physical injury: (1) the defendant intended to inflict severe emotional distress; (2) "the defendant intended to do the painful act with knowledge that it will cause grave distress, when the defendant's position in relation to the plaintiff involves some responsibility aside from the tort itself"; or (3) the defendant's conduct (even if only negligent) infringed on some legally protected interest apart from causing the claimed distress. *Paul v. Providence Health Sys. – Or.*, 351 Or. 587, 597-8, 273 P.3d 106 (2012).

Similarly, where no physical injury has occurred and only economic loss is alleged, a special duty "beyond the common law duty to exercise reasonable care" must exist in order for the defendant to be held liable. *Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 341, 83 P.3d 322 (2004). Damages for purely economic loss may be "available when a defendant has a

duty to guard against the economic loss." *Paul,* 351 Or. at 593. For a special relationship to be found, one party must relinquish autonomy and entrust the other party with control and independent decision-making authority. *Austin v. Univ. of Or.*, 205 F.Supp.3d 1214, 1229 (2016).

In Oregon, the general rule is that no special relationship exists between a student athlete and the university they attend. *Id.* Rather, an "arm's-length relationship" exists when a university is rendering code of conduct decisions. *Id.* At oral argument, plaintiff conceded that the existence of a special relationship (or lack thereof) is dispositive as to her negligence claim. Hearing (Mar. 8, 2023) (doc. 33).

While plaintiff suggests UP's role in awarding a scholarship, setting her educational schedule, and administering athletic programs establishes a special relationship, these allegations do not meet the legal definition under applicable law. SAC ¶ 28 (doc. 8). Rather, plaintiff has described the usual course of business between a university and student, which Oregon law describes as an arm's-length relationship. *Austin*, 205 F.Supp.3d at 1229. Plaintiff has not plead facts showing that she gave special control to UP in any matters, let alone guarding against financial loss. SAC ¶¶ 27-31 (doc. 8). Additionally, plaintiff has not alleged UP acted with intent to inflict emotional distress, or that any of the other exceptions to the physical impact rule apply. *Id.*

Given that no physical injury has been alleged and no special relationship has been plausibly argued, plaintiff's negligence claim fails. Defendants' motion should be granted in this regard.

II. **Claim Against Burton**

Burton argues that plaintiff's third claim for defamation should be dismissed because she "did not make the same statements that Doe allegedly made in the team meeting or at any time"

Page 10 – FINDINGS AND RECOMMENDATION

or, alternatively, her statements are protected under Or. Rev. Stat. § 31.150 and plaintiff has failed to set forth evidence sufficient to establish a probability of success on the merits. Defs.' Mot. Dismiss 27-32 (doc. 16). As a result, Burton contends that she is entitled to judgment in her favor and attorney fees.

Plaintiff contends "Burton adopted Jane Doe's statements as true and as her own [under] ORE 801(4)(b)" and that, in any event, those statements "were made in private." Pl.'s Resp. to Mot. Dismiss 36-37 (doc. 23). Accordingly, plaintiff concludes that Burton's anti-SLAPP motion "intended to (and in fact did) cause unnecessary delay and expense [such that she] is entitled to her attorney fees pursuant to ORS 31.152(3)." *Id.* at 42.

"A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). Anti-SLAPP statutes do "not apply to federal law causes of action . . . a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

The purpose of Oregon's anti-SLAPP statute is to "provide an inexpensive and quick process by which claims that might infringe on the right to petition and free speech on public issues could be evaluated to determine if they [are] frivolous." *Page v. Parsons*, 249 Or.App. 445, 461, 277 P.3d 609 (2012). Thus, Or. Rev. Stat. § 31.150 permits a defendant who is sued over certain actions taken in the public arena to file a special motion to strike which is treated "as a motion to dismiss under Or. R. Civ. P. 21A and requires the court to enter a judgment of dismissal without prejudice if the motion is granted." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009).

Page 11 – FINDINGS AND RECOMMENDATION

The resolution of a special motion to strike entails a two-step process. "First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil actions described in [Section] 31.150(2)" – i.e., "the act underlying the claim itself must have been an act in furtherance of the right to petition and not just associated with it." *Brooks v. Clyne*, 2021 WL 359733, *6 (D. Or. Jan. 31, 2021) (citations and internal quotations omitted). "If the defendant meets the initial burden, the burden shifts to the plaintiff to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id.* (citation and internal quotations omitted). In this context, the plaintiff's "burden is potentially heavier than merely establishing the existence of a disputed issue of fact" and the failure to meet this burden is dispositive. *Vineyard v. Soto*, 2011 WL 5358659, *2 (D. Or. Nov. 7, 2011) (citations omitted).

As a preliminary matter, it is axiomatic that, "[t]o establish a claim for defamation, a plaintiff must show, first, that the defendant made a defamatory statement about the plaintiff." *Wallulis v. Dymowski*, 323 Or. 337, 342-43, 918 P.2d 755 (1996). A statement is defamatory if it is both false and "would subject another to hatred, contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the other is held or to excite adverse, derogatory or unpleasant feelings or opinions against the other." *Marleau v. Truck Ins. Exchange*, 333 Or. 82, 94, 37 P.3d 148 (2001) (citation and internal quotations, brackets, and ellipses omitted).

Here, plaintiff has not alleged that Burton affirmatively made any false or disparaging remark about her. Indeed, at oral argument, plaintiff did not contest defendants' representation that Burton made no comments directed towards plaintiff at the Meeting, despite being expressly afforded the opportunity to do so. Hearing (Mar. 8, 2023) (doc. 33).

Rather, plaintiff's claim is premised on Jane Doe's allegedly defamatory statements, which plaintiff then imputes to Burton under Or. R. Evid. 801(4)(b) because Burton "scheduled a mandatory . . . meeting" and forbid "all players [from] speak[ing] except Jane Doe." SAC ¶¶ 12-13, 34 (doc. 8); *see also* Gregg Decl. ¶¶ 9-13 (doc. 24) (detailing allegedly defamatory statements exclusively from Jane Doe and failing to otherwise identify any false or derogatory statement directly attributable to Burton).

However, as discussed above, all players were required to attend the Meeting and none, excepting Jane Doe, were allowed to speak, despite the fact that Jane Doe's statement implicated wrongdoing in regard to several other teammates. Gregg Decl. ¶ 9 (doc. 24). Moreover, Or. R. Evid. 801(4)(b) has no application to this case: the Federal Rules of Evidence apply in federal court. *See Cabrera v. IndyMac Bank F.S.B.*, 2020 WL 2083971, *4 (C.D. Cal. Feb. 5, 2020) (moving party's "reliance on state evidentiary rules in a federal court is improper" because "the Federal Rules of Evidence apply to proceedings in United States courts") (collecting cases). Even if applicable, Or. R. Evid. 801(4) concerns exceptions to the hearsay rules, which are irrelevant to the issue of whether Burton actually made any statement, defamatory or otherwise, about plaintiff. Stated differently, there is no question surrounding the admissibility of Burton's or Jane Doe's statements at this stage in the proceedings. Finally, the precedent on which plaintiff relies does not concern "imputed" defamatory statements but rather the "intracorporate nonpublication rule" and associational defamation – i.e., "[w]hen all or a significant portion of a small group are defamed, each individual in the group may be found to have been defamed." *See* Pl.'s Resp. to Mot. Dismiss 36-37 (doc. 23) (citing *Wallulis*, 323 Or. 337; *Cushman v. Edgar*, 44 Or.App. 297, 605 P.2d 1210 (1980); and *Cushman v. Day*, 43 Or.App. 123, 602 P.2d 327 (1979)).

And, although plaintiff states broadly that "Burton and Jane Doe conspired and defamed Gregg to have her removed from UP's Volleyball Team," and otherwise argues in her opposition that "Jane Doe became Coach Burton's agent," the SAC does not contain any factual allegations in support of these legal conclusions. SAC ¶ 14 (doc. 8); Pl.'s Resp. to Mot. Dismiss 36 (doc. 23).

In sum, plaintiff's defamation claim fails at the pleadings level, especially because there are no well-plead facts intimating that Burton's intent in scheduling the meeting was anything other than to provide a forum for a student to speak her truth following a traumatic incident. *See Robinson v. Pac. Ret. Servs., Inc.*, 2005 WL 139075, *2-3 (D. Or. Jan. 21, 2005) (noting that "a conspiracy claim must be supported by specific factual allegations" and separately dismissing a defamation claim where the plaintiff failed to specifically identify "any statements made by [the named defendant that] were published to a third person"); *Iqbal*, 556 U.S. at 682 (an allegation is not plausible where there is an "obvious alternative explanation" for the alleged misconduct) (citation and internal quotations omitted); *see also Dunlap v. Wayne*, 105 Wash.2d 529, 542, 716 P.2d 842 (1986) (affirming the trial court's grant of summary judgment in favor of the defendant where "[t]he plaintiff has not provided any admissible evidence of the defendant personally making a defamatory statement" and instead premised his claim on "a characterization made by defendant's attorney in a letter"); *Life Designs Ranch, Inc. v. Sommer*, 191 Wash.App. 320, 335-36, 364 P.3d 129 (2015), *rev. denied*, 185 Wash.2d 1022, 369 P.3d 500 (2016) (in the context of a claim based on an article that provided a hyperlink to allegedly false online information, merely providing "access to" to a previously published defamatory statement is not separately actionable).[2]

---

[2] Even if plaintiff could demonstrate that Burton made defamatory statements, such statements are likely to be privileged since plaintiff does not allege any well-plead facts evincing malice or an improper motive. *See Neumann v. Liles*, 358 Or. 706, 712, 369 P.3d 1117 (2016) (allegedly

Page 14 – FINDINGS AND RECOMMENDATION

Because plaintiff fails to state a plausible defamation claim under Fed. R. Civ. P. 8 and 12(b)(6), the Court declines to resolve Burton's anti-SLAPP motion. The Court nonetheless notes that, assuming Burton can establish her remarks qualify as "[a] statement made . . . in a place open to the public or a public forum in connection with an issue of public interest" pursuant to Or. Rev. Stat. § 31.150(2)(c),[3] plaintiff neglected to meet her responsive burden. That is, plaintiff has not set forth any meaningful argument or evidence concerning the probability of her success on the merits, which is fatal to her claim. *See Shwern v. Plunkett*, 45 F.3d 1241, 1246 (9th Cir. 2017) (granting a motion to strike under Or. Rev. Stat. § 31.150 where there was no indication the defendant had "spoke[n] to *anyone* about the [underlying rape] incident [except a friend]," let alone was "the source of the online commentary"); *see also Handy v. Lane County*, 360 Or. 605, 623-

---

defamatory statement is not actionable if it "was made in good faith and without malice") (citation and internal quotations omitted); *Wattenburg v. United Med. Labs., Inc.*, 269 Or. 377, 379-83, 525 P.2d 113 (1974) ("[a] defamatory statement is privileged if it . . . was on a subject of mutual concern to defendants and the persons to whom the statement was made"; this "privilege is conditional rather than absolute because the privilege is lost if the statement is made maliciously" and "[t]he plaintiff has the burden of proving malice").

[3] There is a dearth of precedent concerning what constitutes a public place or forum in this context and the cases cited by both parties do not clearly indicate whether Burton's statements (that is, presuming Jane Doe's comments can be fairly imputed to Burton) fall within the purview of Or. Rev. Stat. § 31.150(2)(c). Specifically, plaintiff relies on *C.R. v. Eugene Sch. Distr. 4J.*, 308 Or.App. 773, 481 P.3d 334 (2021), whereas Burton relies on *Cabrera v. Alam*, 197 Cal.App.4th 1077, 129 Cal.Rptr.3d 74 (2011). However, *C.R.* simply denoted that, while "[t]he parties appear to agree that a school disciplinary proceeding and its investigation fall within the scope of ORS 31.150(2)," the Oregon Court of Appeals disagreed because "[d]efendant has not offered evidence that its discipline of plaintiff was a public event in connection with an issue of public interest." *C.R.*, 308 Or.App. at 779-80. As such, *C.R.* resolved this issue in passing and did not outline any facts surrounding the defendant's allegedly defamatory speech, such that this case is of little aid here. And *Cabrera* is even less helpful, in that it emanates from a homeowners' association annual meeting for a development consisting of 228 condominiums, and the court reasoned that such meetings are a "public forum" within the meaning of California's anti-SLAPP statute "because they serve a function similar to that of a governmental body . . . owners of planned development units comprise a little democratic subsociety." *Cabrera*, 197 Cal.App.4th at 1088 (citations and internal quotations and brackets omitted).

Page 15 – FINDINGS AND RECOMMENDATION

25, 385 P.3d 1016 (2016) (the plaintiff failed to meet his burden of production in regard to an anti-SLAPP motion emanating from alleged public meetings law violations where two of the three individually named defendants did not actually proffer any written or oral statement concerning the underlying issue, concluding the plaintiff "must show something more than [the] passive receipt of [information]"); Wingard v. Or. Family Council, Inc., 290 Or.App. 518, 524, 417 P.3d 545 (2018) (granting an anti-SLAPP motion where the plaintiff "failed to present sufficient evidence from which a reasonable factfinder could find that defendants knew that those assertions (including the description of the [sexual] relationship as 'pressured') were false (or acted with reckless disregard as to their falsity) at the time that defendants published their statements").

### III.   Motion for Leave to Amend

Via her response brief, plaintiff seeks leave to amend pursuant to Fed. R. Civ. P. 15(a)(2) "should the court grant any or all of [defendants'] motion" and "to include the specific claim that [UP] breached its duty of good faith and fair dealing." Pl.'s Resp. to Mot. Dismiss 42 (doc. 23). Plaintiff's request, however, fails to comply with this Court's Local Rules and is therefore denied. *See* LR 7-1(b) ("[m]otions may not be combined with any response, reply, or other pleading"); LR 15-1 ("[a] motion for leave to file an amended or supplemental pleading must describe the proposed changes" and "[a] copy of the proposed amended or amended pleading that shows – through redlining, underlining, strikeouts, or other similarly effective methods – how the amended pleading differs from the operative or superseded pleading must be attached as an exhibit").

### RECOMMENDATION

For the foregoing reasons, defendants' Motion to Dismiss (doc. 16) should be granted. Because the Court resolved Burton's anti-SLAPP motion on alternate grounds, the parties' respective requests for attorney fees under Or. Rev. Stat. § 31.152 are denied. Any motion to

amend the complaint must conform with this Findings and Recommendation and be filed within 30 days of the District Judge's order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 16th day of March, 2023.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge